People of the State of Illinois, Plaintiff-Appellee, v. Roosevelt Scott, Defendant-Appellant.

**Gen. No. 50,071.**

First District, First Division.

February 17, 1969.

Gerald E. Frank, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert B. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

In November, 1959, the defendant, Roosevelt Scott, was charged with the murder of Gertrude Rhinehardt and John Schot. After a jury trial in the Criminal Court of Cook County, Scott was found guilty of the crimes and received the death penalty. In September, 1963, this conviction was reversed and remanded by the Illinois Supreme Court because of various trial errors. People v. Scott, 29 Ill2d 97, 193 NE2d 814 (1964).

Prior to his second trial, Scott was represented by an attorney who has spent some four years of work on the case. This attorney offered several pretrial motions in January, 1964, on the defendant's behalf, but on March 3, 1964, the attorney stated that he felt he could no longer effectively represent the defendant. The defendant concurred, and the attorney was permitted to withdraw as defense counsel by the court. The defendant requested a new attorney be appointed by the Bar Association, which request was granted on March 25, 1964. The defendant subsequently voiced his displeasure with this new attorney, and the latter was allowed to withdraw as defense counsel on May 26, 1964. The defendant refused the services of the Public Defender, and expressed his desire to represent himself, whereupon on June 10, 1964, the court appointed a Public Defender as legal advisor to the defendant to assist the defendant in his defense. On June 11, 1964, defendant presented a motion to dismiss the charges against him which the court de-

nied. The court then suggested that the defendant receive a Behavior Clinic examination, however, the defendant stated he was examined at the clinic in 1961 and was declared "quite sane." The court continued to advise the defendant to undergo an examination, yet the defendant refused to do so.

On June 16, 1964, the defendant and his legal advisor appeared before the court, and the court offered to hold a hearing on a motion to suppress an alleged unsigned statement or confession of November 25, 1959. This motion had been made on January 9, 1964, by the attorney who had originally handled the defendant's cause, but had not yet been heard or ruled upon by the trial court. The defendant, contrary to the advice of his legal advisor, refused to renew or refile the motion to suppress the alleged statement or confession, and declined to have a hearing on the question of the voluntariness of the statement, stating that he had never made a statement or confession nor had signed such a document, and the filing of this motion would prejudice his defense as he saw it. (The defendant subsequently reaffirmed this position to the court on several different occasions.)

The cause was set for trial on July 13, 1964. The defendant agreed to let his legal advisor conduct the voir dire and select the jury, but insisted upon conducting his own defense. At the trial, the State introduced the statement allegedly given by the defendant on November 25, 1959, in which defendant admitted his complicity in the murders of Mrs. Rhinehardt and Mr. Schot. The defense did not put on any witnesses in its behalf after the State rested its case. On July 29, 1964, the jury found the defendant guilty of the murder of Gertrude Rhinehardt as charged in the indictment. Judgment was entered on the findings against the defendant, and the defendant was sentenced to the penitentiary for not less than one hundred nor more than one hundred-fifty years. This appeal followed in order to review certain preliminary

findings and the judgment. No question is raised as to the pleadings.

It is the theory of the defendant that he was denied due process of law when the trial court failed to impanel a jury for the purpose of determining whether the defendant was competent to stand trial; that the trial court committed reversible error by its failure to conduct a full hearing on the admissibility of the defendant's alleged confession; and that the Illinois Courts of Review must make an independent determination as to the voluntariness of the defendant's alleged confession.

It is defendant's first contention that section 104–2(a), read in conjunction with section 104–2(d), chapter 38, Ill Rev Stats 1965, expressly places an affirmative duty upon the trial court to impanel a jury for the purpose of determining the competency of the defendant to stand trial. Specifically, section 104–2(a) states:

> "If before a trial, or after a judgment has been entered but before pronouncement of sentence, or after a death sentence has been imposed but before execution of that sentence, the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall impanel a jury to determine the defendant's competency. If a jury is waived by the defendant, the court shall conduct a hearing to determine the defendant's competency."

While section 104–2(d) provides:

> "The court may appoint qualified experts who shall be compensated by the county to examine the defendant with regard to his competency and to testify at the hearing. Any party may introduce at the hearing other evidence regarding the defendant's competency. No statement made by the accused in the course of any examination into his competency provided for by this Section, whether the exami-

102

nation shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding."

Section 104–1 defines the meaning of "incompetent":

"For the purpose of this Article, 'incompetent' means a person charged with an offense who is unable because of a physical or mental condition:

"(a) To understand the nature and purpose of the proceedings against him; or

"(b) To assist in his defense; or

"(c) After a death sentence has been imposed, to understand the nature and purpose of such sentence."

Defendant advances a series of Illinois cases, beginning with People v. Geary, 298 Ill 236, 131 NE 652 (1921), for proposition that when facts give rise to doubt the defendant's competency to stand trial, the court must suspend all proceedings and conduct a competency hearing. People v. Bender, 20 Ill2d 45, 169 NE2d 328 (1961); People v. Robinson, 22 Ill2d 162, 174 NE2d 820 (1961); People v. Richeson, 24 Ill2d 182, 181 NE2d 170 (1962); People v. Thompson, 36 Ill2d 332, 223 NE2d 97 (1967); People v. Burks, 80 Ill App2d 324, 224 NE2d 668 (1967).

The defendant also devotes twenty-six pages of his brief to excerpts from the record of the proceedings concerning defendant's behavior and actions during pretrial matters wherein: the attorney who originally represented defendant was allowed to withdraw from the case; the defendant's subsequent displeasure with the next attorney appointed to represent him and his withdrawal from the case; the defendant's refusal to accept the Public Defender as counsel; the defendant's insistence in representing himself, and his ignoring the court's advice to renew the motion to suppress the alleged statement or confession; and defendant's refusal to submit to the Be-

havior Clinic examination. It is upon the above conduct that defendant contends the trial court committed reversible error in not suspending the proceedings to conduct a competency hearing, and that failure to conduct such a hearing denied defendant due process of law.

 It is well established that the trial or conviction of an incompetent defendant violates his right to due process of law. People v. Burson, 11 Ill2d 360, 143 NE2d 239. Illinois courts have defined "competency" as involving two distinct elements: (1) Whether the defendant understands the nature of the charge or charges made against him; and (2) Whether the defendant was unable to cooperate with his counsel and conduct his defense in a rational and reasonable manner. People v. Richeson, supra, People v. Bender, supra, People v. Robinson, supra, People v. Burks, supra. Sections 104–2(a), (b) both specifically state that the trial court must conduct a competency hearing only when the court has reason to believe that the defendant is incompetent, and in People v. Baker, 26 Ill2d 484, 187 NE2d 227 (1963), our Supreme Court has construed the concept of these statutes as follows:

> "We have thus held that if, before or during trial, facts are brought to the attention of the court, either from its own observations or by suggestion of counsel, which raise a bona fide doubt as to a defendant's present sanity, it becomes the duty of the court to impanel a jury to determine whether the accused is capable of understanding the charges against him and of co-operating with his counsel."

In People v. Milligan, 28 Ill2d 203, 190 NE2d 753 (1963), the concept of "bona fide doubt" was further construed:

> "The key to requiring a sanity trial is the existence of a bona fide doubt as to the defendant's present sanity. The trial court, therefore, has discretion in

104

determining whether the facts of a particular case warrant a sanity hearing."

It is thus clearly apparent that a trial court must conduct a competency hearing only when it (the trial court) has reason to believe that there is a bona fide doubt as to whether the defendant is capable of understanding the nature of the charged offense and is capable of cooperating with counsel. The record before us does not disclose there was any request by defendant or his advisor for a competency hearing, nor were the acts and behavior of the defendant of the nature that would raise a bona fide doubt of his competency which would require the court to hold a hearing. The trial court was able to observe the defendant's behavior and conduct before and during the trial, and at no time did the trial court comment or express any doubt as to the defendant's competency to stand trial or participate in pretrial proceedings. Defendant's dissatisfaction with appointed counsel, lack of faith in the Public Defender, and his insistent, intentional and voluntary choice to act as his own attorney and to employ his own trial strategy cannot be construed to establish an inability to understand the nature of the charged offense. It is interesting to note that of the three capable attorneys who were involved in defending and advising the defendant at various times during the proceedings, none of these men, nor the defendant, ever requested a competency hearing or suggested the court consider conducting such a hearing. Defendant's original counsel, who had spent over four years representing defendant, never intimated that his withdrawal from the case was dictated by defendant's incapacity to cooperate. Counsel expressly declared that:

"Your Honor, Mr. Scott and I have discussed this at length. I am in no position to speak for him, but I do believe that he understands the consequences of

his request, his first request this morning, and mine. He knows the volume of work that has gone into the case . . . ."

It therefore appears defendant was not under any incapacitation to cooperate, as would constitute incompetency. There is no evidence in this record that the behavior, conduct, or acts of the defendant were true manifestations of incompetency to understand the nature of the proceedings, nor was there any evidence presented of any prior mental illness suffered by the defendant. The record reflects numerous instances where defendant displayed ability to assist and conduct his defense in a reasonable and rational manner wherein he displayed mental alertness as well as understanding and knowledge of the proceedings. The following observation made by the court in People v. Shrake, 25 Ill2d 141, 182 NE2d 754 (1962), is most pertinent here:

"We see nothing in these facts which establish such bona fide doubt of defendant's sanity as to have required the court to cause a sanity hearing to be held. No claim was made at any time that defendant was insane, nor did it appear that he had ever been so adjudicated. Nothing in his testimony or demeanor suggests a lack of mental capacity but shows instead that he understood the nature of the proceedings against him, that he was fully capable of cooperating with his counsel and the court, and that he knew and had known at all times the consequences of his criminal actions."

██ Under the circumstances contained in this record, we are of the opinion that the trial court did not violate any affirmative duty to the defendant, and did not deny any constitutional right of the defendant, when he did not, of his own volition, impanel a jury to conduct a competency hearing as to defendant's fitness to stand trial.

106

Defendant next contends the trial court's failure to conduct a hearing on the admissibility of the alleged confession, although no request was made by the defendant as to a hearing, and the court's failure to conduct a hearing on the issue of voluntariness, even though defendant denied making any such confession, denied the defendant due process of law. On January 9, 1964, defendant's original attorney filed several pretrial motions, including a motion to suppress a confession. The motions were not then ruled upon. On May 22, 1964, defendant filed a pro se motion to suppress this alleged confession on the ground that he had never signed a confession, and argued that no such confession existed. The court overruled this motion on May 26, 1964, only after explaining to the defendant that it was legally deficient, and advised defendant to predicate such a motion on the grounds of involuntariness. On June 16, 1964, the trial court repeatedly urged defendant to renew the motions made on January 9, 1964, by the attorney who first represented him, but the defendant wanted such motions withdrawn. (Contrary to his legal advisor's advice.) A trial date was set, and the unsigned instrument was subsequently used against the defendant.

Our reading of the record reveals emphatically that Roosevelt Scott, acting voluntarily as his own attorney, flatly refused to file a motion to suppress the alleged confession, based on its involuntariness, or to renew the prior motion filed by the first attorney who represented him. While the court urged the defendant that it would be to his advantage to pursue such a procedure, as did his legal advisor, the defendant declined to heed that advice, so that the objection of voluntariness and a proper motion to suppress were never claimed at or before the trial, and therefore, were waived. People v. McMath, 40 Ill2d 388, 240 NE2d 593 (1968); People v. Caldwell, 39 Ill2d 346, 236 NE2d 706 (1968). It is our opinion the trial court did all that it could rea-

sonably do to convince the defendant that he should seek a hearing on the voluntariness of the confession. It has long been the rule in Illinois that it is incumbent upon a defendant to raise the issue of voluntariness of a confession either prior to, or during trial. As the court said, in People v. Hurry, 385 Ill 486, 52 NE2d 173 (1944):

> "The law is well settled that a confession or admission by a defendant in a criminal case is admissible without preliminary proof, where no objection is made that it is involuntary. If objection is made the question of whether the confession is voluntary or involuntary must be decided by the court upon a preliminary hearing to determine the admissibility."

In People v. Caldwell, supra, this view was reaffirmed:

> "The rule adopted in Jackson v. Denno, 378 US 368, 84 S Ct 1774, 12 L Ed2d 908, which requires that an initial judicial determination of the voluntariness of a defendant's confession be made outside the presence of the jury when objection is made to its admission, has long been the law in this State. (See People v. Fox, 319 Ill 606, 616–619, 150 NE 347.) We have said that 'a confession may be challenged either by preliminary hearing on a motion to suppress (People v. Spencer, 27 Ill2d 320, 189 NE2d 270) or by appropriate objection thereto at the trial (People v. Wagoner, 8 Ill2d 188, 133 NE2d 24), and failure to pursue one of these devices ordinarily precludes consideration of the matter on appeal (People v. Williams, 26 Ill2d 190, 192, 186 NE2d 353; People v. Jones, 31 Ill2d 42, 50, 198 NE2d 821) . . . .' (People v. Taylor, 33 Ill2d 417, 421, 211 NE2d 673, 675.)"

In the instant case, the defendant filed a pro se motion to suppress the confession on the grounds that the

confession did not contain his signature, which did not raise the question of voluntariness, and which was not grounds for suppression. As the trial judge stated in overruling the motion:

"THE COURT: I will advise you on the motion you have presently filed, in the opinion of the court it is not well founded in the law and not in your best interest. If you wish to proceed on that motion which seeks to suppress a confession merely because it does not contain your signature, your interest would not be protected to my understanding. And at the last trial and at the present time, the attorneys representing you have indicated an intention to urge the court to suppress the confession on the ground it was involuntary."

It is our opinion there was no violation of the defendant's right to test the voluntariness of the confession, because of the court's failure to conduct a hearing on the admissibility of such confession, and such action on the part of the trial judge did not deny the defendant due process of law. People v. Norfleet, 29 Ill2d 287, 194 NE2d 220 (1964). People v. Thigpen, 33 Ill2d 595, 213 NE2d 534 (1966), and other cases advanced by the defendant are distinguishable from the instant case.

Defendant also argues that the Appellate Court should make an independent determination as to the voluntariness of the defendant's confession, and whether or not such confession has been coerced. We have reviewed the entire record and find no evidence or mention of deception, illegal confinement or physical brutality by the defendant or by any of his attorneys or legal advisor practiced upon the defendant to elicit any statement from him. The lie detector test administered to defendant was at his own request, and the lapse of five and one-half hours from the time he was taken from the police station to the crime laboratory for such test and back to the

police station, and the allegations in his pro se motion to dismiss, fail to indicate any competent evidence of coercion exercised upon the defendant. In the various United States Supreme Court cases cited by defendant, the Court ruled that confessions had been obtained involuntarily from the respective defendants, and those cases involved factual evidence of coercion that is totally lacking in the case at bar.

For the above reasons the judgment of the trial court is affirmed.

Judgment affirmed.

MURPHY and BURMAN, JJ., concur.