THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW DENT, Defendant-Appellant.

(No. 53656;

First District—December 16, 1970.

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Anthony J. Onesto, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is from a judgment that convicted defendant of armed robbery. He was sentenced to serve three to five years. In urging us to reverse, defendant contends that (1), the trial court erred when it refused to grant a motion for a psychiatric evaluation made on his behalf the day of trial; (2), he was denied due process of law by an inherently suggestive identification procedure; and (3), admission in evidence of a confession, claimed to be the direct result of an illegal lineup procedure, deprived him of the constitutional rights. These contentions arise from a trial in which defendant neither testified nor offered any evidence. In this appeal the sufficiency of the evidence is not questioned.

Defendant was brought to trial on December 11, 1967. When the case was called, his counsel told the court that "[a]t this time I would like to make a motion for the defendant to be examined by the Psychiatric Institute of the Circuit Court of Cook County on the terms of competency to stand trial, and the question of possible temporary insanity at the time of trial. The main question in my mind right now is competency to stand trial." The trial judge called attention to a Behavior Clinic examination which the court ordered on August 14, 1967, and reported August 30. In this report the director diagnosed defendant as having a "[s]ociopathic personality disturbance. He knows the nature of the charge and is able to cooperate with his counsel." Defendant's court-appointed counsel reminded the trial judge that the examination performed on the defendant was approximately six months old; and although the defendant did not want any further examinations, he, counsel, felt "[t]here is a genuine question of competency." After hearing argument, the trial judge denied the motion. This denial is the basis of defendant's first contention. He argues that the trial court erred in refusing the motion that he be subjected to a psychiatric evaluation before trial.

■■ Despite the importance defendant now attaches to it, the motion was not supported by factual allegations, nothing was said to the trial judge to explain counsel's conclusion that defendant lacked competency to stand trial. Our law provides that "If before a trial, * * * the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall impanel a jury to determine the defendant's competency. * * *" (Ill. Rev. Stat. 1967, ch. 38, par. 104—2(a).) The duty of the trial judge to hold a hearing arises when, either

from the court's own observations or upon the suggestion of counsel, there is a *bona fide* doubt as to defendant's mental capacity. (*People v. Thomas*, 43 Ill.2d 328, 332, 253 N.E.2d 431.) Key to the requirement that a competency determination be made is the *bona fide* doubt concerning defendant's present sanity. See *People v. Scott*, 106 Ill.App.2d 98, 245 N.E.2d 490.

■■ Where a motion is made for a psychiatric examination but it is not alleged that the defendant is unable to cooperate with his counsel, or is unable to comprehend the nature of the charge against him and it is not contended there is evidence bearing on defendant's competency, a *bona fide* doubt concerning the accused's sanity is not raised. Under such circumstances, the trial judge is not required to conduct a competency hearing. (*People v. Lego*, 32 Ill.2d 76, 203 N.E.2d 875.) This is the case shown in the record before us. Therefore, the trial judge did not err when he refusd the request that defendant be subjected to a psychiatric examination.

After the motion was denied, defendant waived trial by jury. His counsel filed motions to suppress the identification testimony and to suppress a confession. It was stipulated that evidence in support of defendant's motions would be heard by the trial judge when the prosecution and the defense presented their case. Accordingly, Mrs. Rosie Ruffin, cashier of the company that was robbed, and Detective Lawrence Copeland described what occurred at the Area 2 Headquarters when defendant was identified: Mrs. Ruffin and Gary Storey, a fellow employee, were taken to the headquarters by a policeman who told them "[t]hey had apprehended him and they would like for us to pick him out of a line." There, a lineup consisting of three men, was conducted. The men, one being the defendant, were dressed "[c]asually, nothing outstanding, one had a suit on, shirt, no tie, none had ties on, one had a sport jacket." The defendant wore the same clothing he had on when arrested. All the men in the lineup were Negroes. One was a little darker in complexion, one was about the same color as the defendant. One was a little bit taller than the defendant. The other was about the same height. All weighed between 150 and 175 pounds. The men were asked to about face. Policemen present asked Storey and Mrs. Ruffin if they recognized anyone. Storey tapped defendant's shoulder. Ten seconds or so later, Mrs. Ruffin touched the defendant.

After this testimony, defendant argued that the identification procedure described by Mrs. Ruffin was so inherently suggestive that her in-court identification had to be suppressed because its admission would deny him a fair trial. In this court, this is defendant's second contention. He relies on (*Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. He

argues that Mrs. Ruffin and Storey were prepared by the policemen to view the lineup; that the lineup was unfairly composed when only defendant had clothing similar to that worn by the alleged robber, thus making his selection easy; and that the policemen suggestively allowed both identifying witnesses to view the lineup at the same time, thus enabling Mrs. Ruffin to identify defendant only after Storey had pointed him out.

■■ It is now established that an unrepresented defendant is free to prove, based on the totality of the surrounding circumstances, that the viewing of him by a victim of a crime was so wanting in fairness as to deprive him of due process of law. (*People v. Lee*, 44 Ill.2d 161, 168, 254 N.E.2d 469.) A defendant so claiming must prove that the confrontation conducted (a lineup, a showup, or the like) was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. (*People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152; *People v. Nelson*, 40 Ill.2d 146, 150, 238 N.E.2d 378.) The test is whether the identification procedures were "unnecessarily" suggestive. The methods used must be examined in the light of the circumstances of each case. (See *Stovall v. Denno, supra.*) When we examine the circumstances of this case, we conclude that defendant's contention is without merit. The identification procedure used in this case was not unnecessarily suggestive. *People v. Chambers*, 112 Ill.App.2d 347, 251 N.E.2d 362.

■■ Even were this not so, the record contains uncontradicted evidence of Mrs. Ruffin's excellent opportunity to observe the man who committed the robbery. This man was in her presence from seven to ten minutes. He did not wear a mask or cap of any kind. He stood directly in front of her, separated only by a flat counter, less than three feet in width. The incident occurred at 1:10 P.M. It was in the well lit offices of a loan company. Shortly after the robbery, Mrs. Ruffin called the police. She gave them the license number of the car used and a description of the man, down to the small detail of the color of socks he wore. On the same day she viewed the lineup. Passage of time did not cause her to doubt defendant's identity. She never hesitated in her identification of him; and she never varied from it in her testimony. Thus, the prosecution established a prior independent and uninfluenced source for Mrs. Ruffin's in-court identification of the defendant. Under these circumstances, her testimony cannot be rejected, even if there were a tainted identification procedure. (*People v. McMath*, 104 Ill.App.2d 302, 244 N.E.2d 330, aff'd. 45 Ill.2d 33, 256 N.E.2d 835; *People v. Cook*, 113 Ill.App.2d 231, 252 N.E.2d 29.) In our judgment the trial judge correctly denied defendant's motion to suppress the identification testimony of Mrs. Ruffin.

Defendant's third contention is that evidence of a confession he made to Detective Lawrence Copeland was improperly admitted. Copeland was the only witness who testified concerning this phase of the case. He said that when defendant was brought into Area 2, "We told the defendant at that time he had a right to remain silent. We told him anything he did say could and would be used against him in Court. We told him he did not have to answer any questions without an attorney present, and if he did not have financial ability to retain a lawyer, one would be appointed for him before he had to answer any questions." When asked what was defendant's response, Detective Copeland replied, "He said he knew everything we said, he understood everything we said." After the lineup procedure, and after Mrs. Ruffin and Storey identified defendant, they were asked to leave the room. According to Detective Copeland, "We asked him [the defendant] if he committed the robbery. He said he did." Defendant argues that his motion to suppress this confession should have been sustained because the State did not show he effectively waived his rights under the Fifth Amendment; and that the statement attributed to him by Detective Copeland was the fruit of an illegal lineup identification.

■■  Neither this contention nor the argument it generates is supported by the record. The lineup was not illegal. The State's evidence was not contradicted. The record shows that at the beginning of the identification procedure, defendant was warned of his constitutional rights. (See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.) In response, defendant said he knew what was told him and he understood what was explained. This was a waiver. (*People v. Stone*, 45 Ill.2d 100, 256 N.E.2d 803; *People v. Johnson*, 112 Ill.App.2d 148, 251 N.E.2d 393.) The policemen involved did not have to repeat the warnings they gave defendant at the beginning of the identification procedure. (Compare *People v. Hill*, 39 Ill.2d 125, 233 N.E.2d 367 and see *People v. Landgham*, 122 Ill.App.2d 9, 257 N.E.2d 484.) Therefore, the trial judge ruled correctly when he denied defendant's motion to suppress the confession. Judgment is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.