# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NIKOLA GAVRILOVICH, Plaintiff in Error.

*Opinion filed October 16, 1914.*

1. CRIMINAL LAW—*paragraph 285 of Criminal Code was not intended to abrogate the common law rule as to insane defendant.* Paragraph 285 of the Criminal Code, providing that when a person becomes insane after the commission of the crime he shall not be tried for the offense during the continuance of the insanity, was not intended to abrogate the common law rule that no person can be compelled to plead to a criminal charge and be placed on trial for the crime while insane.

2. SAME—*limits of inquiry where question of defendant's sanity is tried as a preliminary issue.* Where a trial is ordered to determine the question of the sanity of a defendant who is claimed to be insane at the time he is to be arraigned on a criminal charge, the inquiry is limited to the question whether he is insane at the time of the empaneling of the jury, and it is beyond the province of the jury to find that he has become insane since the commission of the crime.

3. SAME—*when admission of a verdict in insanity trial is reversible error.* Where the only defense in a murder trial is the insanity of the defendant when the crime was committed, it is reversible error to admit in evidence the verdict of a jury on the question of the defendant's sanity at the time he was to be arraigned on a former trial on the same charge, which verdict con-

tains a finding that the defendant had become insane since the commission of the crime.

4. SAME—*qualified expert may state his opinion as to how long insanity had existed.* A qualified expert on insanity who has examined the defendant in a murder trial should be permitted to state his opinion, if he has one, as to how long the insanity of the defendant had existed prior to the time the witness made his examination.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

M. R. SULLIVAN, MORGAN LEMASTERS, and C. C. ELLISON, for plaintiff in error.

P. J. LUCEY, Attorney General, J. M. BANDY, State's Attorney, and D. E. DETRICH, (GEORGE P. RAMSEY, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was indicted at the May term, 1910, of the Madison county circuit court for the murder of his wife. The indictment charged plaintiff in error committed the murder by cutting and stabbing his wife with a large knife, April 3, 1910. Shortly after the homicide plaintiff in error was arrested and committed to jail. In November, 1910, and before plaintiff in error was required to plead to the charge of murder, it was represented by his counsel to the presiding judge of the circuit court that he was insane and a request made for a trial upon that issue. The request was granted, a trial had and the following verdict returned November 9: "We, the jury, find Nikola Gavrilovich, the one on trial, has become insane since he committed the crime of murder for which he has been indicted, and that he is insane at this time and was at the time of empaneling the jury." Plaintiff in error was thereupon by the judgment of the court committed to the asylum for insane criminals at Chester, Illinois, there to remain until the

superintendent of said asylum should certify to the court that he had been restored to reason, whereupon he should be returned to the county jail of Madison county for disposition of the charge of murder pending against him in that court. Plaintiff in error was accordingly taken to said asylum for insane criminals, where he remained until April 14, 1913, when he was discharged as restored to reason and was again placed in confinement in the county jail of Madison county. January 26, 1914, on motion of the State's attorney, a jury was empaneled to inquire into the sanity of plaintiff in error. Counsel for plaintiff in error in this case represented him on the trial of that issue. The jury returned this verdict: "We, the jury, find the defendant, Nikola Gavrilovich, at the present time sane." Thereafter plaintiff in error was arraigned, pleaded not guilty to the crime charged and was put upon his trial for said crime. He was found guilty by the jury and his punishment fixed at death. The court overruled a motion for a new trial and sentenced him to be executed. The record is brought here for review on a writ of error granted by this court, which was made a *supersedeas.*

It was not denied that plaintiff in error killed his wife by stabbing her with a large knife. The killing was done in a most cruel and brutal manner. Plaintiff in error and his wife had not been living together for some time prior to the homicide. Testimony was introduced on his behalf that his wife was unfaithful to him, and that for some time prior to their separation their relations were stormy and very inharmonious. The defense was that plaintiff in error became insane and was insane at the time of the homicide. Witnesses called on his behalf testified to acts and conduct on his part of an irrational character for some time prior to the homicide.

Dr. Anderson, superintendent of the asylum for insane criminals at Chester, first saw plaintiff in error November 17, 1910, when he was received in the asylum. He testi-

fied he was then insane but gradually improved until he was returned to the Madison county jail as restored to reason. He was asked, from the history of the case, the appearance and condition of the patient and the examination and tests made by him, whether it was possible to determine what was the probable duration of the insanity. The doctor answered he could tell to his own satisfaction whether it had just come on or had existed for some time. He was then asked how long, in his opinion, at the time he first saw plaintiff in error, his insanity had existed. He answered the patient's type of insanity required a preceding period of development; that this period might be months in duration or might be years; that it was impossible to fix the bounds of the preceding period. On motion of counsel for the State the answer was stricken out as too indefinite and uncertain. The doctor testified plaintiff in error's insanity was of the paranoia type, which requires time to develop and as a rule is incurable.

Dr. Fiegenbaum testified, on behalf of plaintiff in error, that he saw him in June, 1910. He also saw him from four to six weeks prior to that time but could not fix the exact date. The doctor visited the jail where plaintiff in error was confined, as a member of a commission appointed by the Governor. The doctor testified he had for several years made insanity, in all its phases and classifications, a special study. He examined plaintiff in error closely on both his visits to the jail and found him insane. He classified his insanity as paranoia and was of opinion he was incurable. Counsel for plaintiff in error offered to prove by the witness, from examinations made by him in May and June following the commission of the crime and from the history the witness obtained, that in his opinion plaintiff in error was insane at the time of the homicide. This was objected to and the objection overruled, but the witness said he could not answer the question put in that way, and the question remained unanswered. The witness testified

plaintiff in error was "crazy as a bed-bug" when he saw him in the jail and did not then know right from wrong.

In rebuttal the State offered the testimony of lay witnesses tending to show that plaintiff in error was not insane at the time of the commission of the crime. The State also offered in evidence the verdicts and judgments in the two trials of the question of plaintiff in error's sanity. These were objected to by counsel for plaintiff in error, but the objections were overruled and the records admitted in evidence. These rulings of the court and the rulings sustaining objections to questions asked of the medical witnesses by counsel for plaintiff in error are the principal and material objections urged for reversal of the judgment. We are of opinion the admission of the records of the two trials upon the question of plaintiff in error's sanity was erroneous, and the verdict in the first trial of that issue was especially prejudicial.

By paragraph 284 of the Criminal Code (Hurd's Stat. 1913, p. 865,) it is provided that if upon the trial of one charged with crime it appears he was insane when the crime was committed the jury shall so find by their verdict, and shall also find whether he has entirely and permanently recovered. If he has not, he will be committed to the State hospital for the insane, to be kept there until fully and permanently restored. If he was insane when the crime was committed but has fully recovered he must be discharged. Paragraph 285 provides that when a person becomes insane after the commission of a crime he shall not be tried during the continuance of his insanity. If he becomes insane after a verdict of guilty and before judgment no judgment shall be rendered on the verdict during the continuance of the insanity. If after judgment and before execution of the sentence he becomes insane, in case the punishment is capital the execution shall be stayed until the prisoner recovers from insanity. "In all of these cases it shall be the duty of the court to empanel a jury to try the

question whether the accused be, *at the time of empaneling,* insane or lunatic."

The rule at common law was, that an insane person could not be required to plead to an indictment and be placed on his trial for the crime charged. In *Freeman* v. *People,* 4 Denio, 9, (47 Am. Dec. 216,) the court, in discussing this question, after citing Sir Edward Coke and Blackstone's Commentaries, said: "The true reason why an insane person should not be tried is, that he is disabled by an act of God to make a just defense if he have one. As is said in 4 Hargrave's State Trials, 205: 'There may be circumstances lying in his private knowledge which would prove his innocency, of which he can have no advantage, because not known to the persons who shall take upon them his defense.' The most distinguished writers on criminal jurisprudence concur in these humane views, and all agree that no person in a state of insanity should ever be put upon his trial for an alleged crime or be made to suffer the judgment of the law. A madman cannot make a rational defense, and as to punishment, *furiosus solo furore punitur.* ( 1 Hale's P. C. 34, 35; 4 Blackstone's Com. 395, 396; 1 Chitty on Crim. Law,—ed. 1841—p. 761; 1 Russell on Crimes,—ed. 1845—p. 14; Shelford on Lunacy, 467, 468; Stock on Non-Comp. 35, 36.) The statute is explicit that 'no insane person can be tried,' but it does not state in what manner the fact of insanity shall be ascertained. That is left as at common law; and although, in the discretion of the court, other modes than that of a trial by a jury may be resorted to, still in important cases that is regarded as the most discreet and proper course to be adopted. See the authorities last referred to, also 1 Hawkins' P. C. (by Curwood,) p. 3, and note; Stephen on Crim. Law, 3, 4, 280, 334." In the State of New York the statute contained an express provision that no insane person could be tried while he continued insane, but the court said this was no introduction of a new rule but was

in strict conformity with the common law on the subject. In *State* v. *Harrison,* 36 W. Va. 729, (18 L. R. A. 224,) it was said statutes providing that no one, while insane, shall be tried for crime are only declaratory of the common law. See, also, *French* v. *State,* 93 Wis. 325; *United States* v. *Youtsey,* 91 Fed. Rep. 864.

Our statute does not expressly declare that no one shall be tried for a criminal offense while he is insane, but the provision of paragraph 285 that where a person becomes lunatic or insane after the commission of the crime he shall not be tried for the offense during the continuance of the insanity is not and was not intended to be an abrogation of the common law that no person can be compelled to plead to a criminal charge and be placed on trial for the crime while insane. The grounds for this rule of the common law, and for statutes where it has been expressly declared by statute, are very well stated in *Freeman* v. *People, supra.* It has been held in a number of decisions that where it was claimed on behalf of a person who has been indicted for crime that he was insane when the time came for him to be arraigned and called upon to plead, the court might exercise some discretion, in view of the known circumstances and condition of defendant, in determining whether the issue of insanity should be first tried before the defendant should be required to plead and be placed upon his trial for the crime. (*Jones* v. *State,* 13 Ala. 153; *State* v. *Reed,* 41 La. Ann. 581; *State* v. *Harrison, supra.*) When the trial is ordered for the purpose of determining the defendant's sanity the inquiry is confined to his sanity at the time of the trial upon that question, for the purpose of determining whether he is sane and has the capacity to make a rational defense. His mental condition at the time of the commission of the alleged crime is foreign to the inquiry. That question is only competent to be considered and passed upon when the accused is placed upon his trial for the alleged crime. The provision of paragraph 285 of

our Criminal Code that where a jury is empaneled, before the accused is placed upon his trial, to determine the question of his sanity the inquiry is to be whether he was at the time of empaneling the jury insane, is applicable in all cases where the sanity of the accused is tried as a preliminary issue to his being placed on trial for the crime he is charged with. Even in a case where it is not claimed that the accused was insane at the time the crime was committed but where the claim is he has since the commission of the alleged crime become insane, the statute expressly limits the inquiry to the accused's mental condition at the time of empaneling the jury, and in such case the inquiry into and finding as to what his mental condition was previous to the trial upon the question of his sanity are unauthorized and improper. The purpose of the inquiry is to determine whether the accused is then in a mental condition that would justify his being placed on trial for the crime. The verdict of the jury in the trial of the preliminary issue, in November, 1910, which was admitted in evidence, did not expressly find that plaintiff in error was sane at the time of the commission of the alleged crime, but found that he had become insane since that time and was so insane at the time of the empaneling of the jury. This verdict was admitted as evidence to rebut the proof of plaintiff in error that he was insane at the time of the homicide. For the reasons stated it was incompetent. No one can say how much weight was given to it by the jury in this case, but it was of a character well calculated to cause the jury to attach great weight to it and make a serious impression prejudicial to plaintiff in error's defense. Clearly it did not fall within that class of errors that can be said to be harmless. The only defense of plaintiff in error was that the homicide was committed when he was insane, and upon that question he was entitled to a fair trial under competent evidence. It was irrelevant to the determination of plaintiff in error's guilt or innocence upon

his trial for the crime charged whether he had been adjudged insane since its commission and had at a subsequent period been adjudged sane, and we are of opinion that the verdict and judgment in neither of the trials for insanity were competent evidence. Whether, if the inquiry had been confined to plaintiff in error's mental condition at the time of those trials, the admission in evidence of the findings and verdicts would constitute reversible error we do not determine, but in view of the fact the verdict on the first trial for insanity states that plaintiff in error had become insane after the commission of the crime, and would be taken to warrant the inference that he was sane at the time of its commission, such admission must be held reversible error, especially in a case where the death penalty is fixed.

We are also of opinion the court erred in refusing to permit Dr. Anderson, who qualified as an expert on the subject of insanity, to express his opinion as to how long the insanity of plaintiff in error had existed prior to his seeing and examining him. This question was passed upon by the court in *Freeman* v. *People, supra.* In that case the alleged crime was committed in March, and medical witnesses who examined the accused in July following were not permitted to testify, from such examinations, whether, in their opinion, he was insane at the time of the commission of the alleged crime. Upon that question the court said: "And I entertain no doubt that such a witness should be allowed to express an opinion in regard to the mental condition of a person alleged to be insane in the month of March although the opinion may have been founded solely on an examination made in the succeeding July. In most cases, undoubtedly, the opinion would be more satisfactory and convincing when based on observations made at or about the time to which the inquiry relates. But this is not decisive against the reception of such evidence though founded on examinations made at a later period. The com-

petency of the testimony is one question and its effect another. The first is for the court and the latter for the jury. It will sometimes, undoubtedly, be found, and perhaps not unfrequently, that the mental malady is such that an examination would disclose, beyond all peradventure, to a skillful physician, what must have been the condition of the patient for months or years before. The lateness of the time when the examination was made, as well as the character of the malady, are certainly to be considered in determining the degree of consequence which should be given to the opinion of the witness, but unless the intervening time is much greater than from March to July that can furnish no solid objection to the admissibility of the evidence. If I could, therefore, adopt the suggestion that the sixth of July was taken by the court as a reasonable limitation to inquiries of this description, I should still be unable to agree that the court had a right to impose any such restriction upon the witnesses. It was competent for such witnesses to state what their opinions were, whether founded upon examinations before or during the trial; and these opinions might not only extend to the mental condition of the prisoner at the time when the homicide was perpetrated, but they might be brought down to the very time when the witness was speaking."

No error was committed in the rulings upon the examination of Dr. Fiegenbaum. The court overruled an objection to the question put to him whether, from his examinations of plaintiff in error on the two occasions he visited him in the jail together with the previous history he had of the case, he was of opinion plaintiff in error was insane at the time of the homicide, but the doctor declined to answer the question put in that form.

For the errors mentioned the judgment will be reversed and the cause remanded. *Reversed and remanded.*