(No. 41291.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* NORMAN STANHOPE, Appellant.

*Opinion filed Dec. 19, 1969.—Rehearing denied Jan. 26, 1970.*

MALCOM D. DURR and ELDON M. DURR, both of Alton, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and R. W. GRIFFITH, State's Attorney, of Edwardsville, (FRED G. LEACH, Assistant Attorney General, and LEON G. SCROGGINS, Special Assistant State's Attorney, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Norman Stanhope, appeals directly here from the judgment and sentence of death entered following a Madison County jury verdict finding him guilty of murdering his wife on March 8, 1967. Direct appeal lies in all capital cases. (Ill. Rev. Stat. 1967, ch. 110A, par. 603.) While numerous issues were raised by the defendant in this appeal, our disposition here makes it unnecessary to consider any matters other than the question of defendant's competency to stand trial.

A pretrial hearing was held at defense counsel's request to determine defendant's competency to stand trial. The court appointed two psychiatrists to examine him, both of whom did so and testified at the hearing before the court, a jury having been waived. Dr. Groves B. Smith stated that in his opinion defendant was able to assist his attorney in

the preparation of his defense and was competent to stand trial. Dr. Nathan Blackman testified that in his opinion the defendant was intellectually able to assist counsel but was emotionally unable to do so because he lacked the capacity to communicate to counsel or a trier of fact the difficulties leading to the killing, and was therefore incompetent to stand trial. The chief defense counsel testified that the defendant had given him three different versions of the facts and that in his opinion this so greatly hampered the preparation of the defense that defendant was legally incompetent. The court found defendant competent to stand trial, and no error is alleged as to that finding.

The question of Stanhope's competency arose again, however. On Thursday, September 21, which was late in the second week of the trial, the defendant took the witness stand. Prior to his testifying, the court, counsel for both parties, the defendant, and Dr. Nathan Blackman met in chambers. The record does not contain any motion that a competency hearing be then held, nor does the record indicate at whose request this meeting occurred although defendant's brief seems to imply it was at the request of defense counsel. During this meeting Dr. Blackman and defense counsel asked questions of the defendant and the defendant answered them in a normal manner except that when asked the date he replied March 9, 1967, and when asked if he knew why he was present he responded that he did not know and was anxious to learn why he was being held. This in-chambers proceeding, so far as the record indicates, culminated with defense counsel stating: "O.K. I have nothing further, Your Honor. We are ready to go— ready to proceed." No ruling was requested or made by the court and the parties moved into the courtroom.

The defendant then took the stand and a fair summary of his testimony was that he believed the date was March 9, 1967; that his wife was home and would be concerned about his absence, and that the doctor had declared him fit

to report back to work on Monday. In short, he gave indications of having amnesia regarding the period of time between March 8, 1967, and September 21, 1967. On cross-examination defendant became more persistent in his desire to know why he was being held and refused to answer questions until he had an attorney and was told why he was present in the courtroom. Defense counsel stated that he and his two colleagues were attorneys of record for the defendant, and that on behalf of defendant he requested that the cross-examination be continued to completion. Defense counsel refused to advise the defendant why he was being held and requested the court not to advise him. The proceedings continued in a highly unusual manner—the defendant requesting that the situation be explained to him; defense counsel requesting the court not to give an explanation; and the State's Attorney finally moving for a recess, which the court granted. Thereafter defendant refused to take the stand, and defense counsel refused to advise him to take the stand or not to do so. Cross-examination was resumed and completed with defendant standing, and then later seated, near his counsel. The defense then called Dr. Nathan Blackman, who testified extensively regarding the defendant's mental condition. Dr. Blackman had examined the defendant on several occasions, and had also interviewed his daughter. In addition, he examined the defendant on the morning of September 21 for "at least thirty minutes" in an effort to interpret the symptoms of amnesia which had first been manifest that day. A few excerpts from Dr. Blackman's testimony will be useful here.

"[T]his regression this morning sets in a different kind of psychotic disorganization or sudden breaks in his way of holding on to reality. And it is not necessarily a reaction to the stress of this trial but a sudden slipping, a sudden bout of disorganized thinking so that he is totally clear up to March 8 and the period from then to the present is totally lost to him. * * * I think his mind is totally regressed

* * *." After further testimony, defense counsel asked Dr. Blackman, "Do you feel that presently the defendant, Norman Stanhope, is able to adequately communicate with his counsel with respect to this case?" The State objected, stating, "That is not the question before the Court at this time," which objection was sustained. The defense counsel rephrased his question and met the same objection and once again it was sustained. On cross-examination, Dr. Blackman further clarified his conclusions: "Norman Stanhope through this regression that manifested itself this morning is in some kind of psychotic denial of what he is with, what he is being presented with by this jury and this court. * * * it was a psychotic kind of regression and not merely a type of amnesia a person resorts to because he cannot face something."

In rebuttal, the State called Dr. Groves Smith, whose examinations of Stanhope had been somewhat less extensive than Dr. Blackman's and who had not examined Stanhope since September 5, although Dr. Smith had been present in the courtroom when defendant testified earlier on the 21st, and also on September 11. He testified essentially as he had at the pretrial competency hearing, to the effect that "there are personality trial disturbances but that is not mental illness." On crosss-examination, he was asked, "Do you think he [defendant] looks like a normal person today?" He responded, "I cannot make an expression without seeing him as of today. But I will say that this conduct which I see here is not evidence of mental illness today in my evaluation of knowing him since June. * * * It is evidence of hysterical amnesia in which there is a wilful disregard of wanting to have the Court see him as he has been seen by me on other occasions, and it is a thing I have run into at least, I would say, three or four thousand times * * *." When asked hypothetically if the defendant's inability to recall the events from March 8, 1967, to the present would "indicate anything at all with regard to his mental capacity or mental con-

dition?", Dr. Smith replied, "I feel this is a convenient amnesia and I say it advisedly." Being then asked, "You think it is a real amnesia?", he replied, "I feel it is a convenient amnesia. I don't know, because I haven't had the chance to examine the person, but it is one that I have found to happen time after time in situations where they are facing issues which they do not like."

Dr. Smith clarified his impressions somewhat in the following exchange:

"Q. Well, you think Norman is all right here this morning?

A. I won't say.

Q. Do you think he knows what is going on here today, doctor?

A. In my frank opinion, I would say yes.

Q. Do you think—

A. But a convenient amnesia means that oftentimes the individual is not in touch because there is not the will to do it.

Q. You don't know whether or not he understands?

A. I do not know, but I do feel this, it is not my provision to make that judgment."

The behavior of the defendant starting on September 21, and the testimony of the two psychiatrists must be examined in light of the provisions of section 104—2(b) of the Code of Criminal Procedure, which states: "If during the trial the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall conduct a hearing to determine the defendant's competency and shall at the election of the defendant impanel a jury to determine that issue." (Ill. Rev. Stat. 1967, ch. 38, par. 104—2(b).) The defendant argues that the circumstances which arose September 21, during the trial, gave the trial court reason to believe defendant was incompetent and that in order to comply with statutory commands and the requirements of due process (see *Pate* v. *Robinson*, 383

U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815) the court should have suspended the proceedings and conducted a hearing to determine defendant's competency. The State maintains that the defense is barred from raising this issue on review because they requested the cross-examination to proceed. This court has held that the requirements of the statute must be met even if defense counsel fails to request a hearing. *E.g., People* v. *Bender,* 27 Ill.2d 173; *People* v. *Burson,* 11 Ill.2d 360.

While the question whether a *bona fide* doubt has been raised as to defendant's competency is largely within the discretion of the trial judge (see *e.g., People* v. *Bortnyak,* 39 Ill.2d 545; *People* v. *Pridgen,* 37 Ill.2d 295; *People* v. *Chatman,* 36 Ill.2d 305), we must conclude from the record in this case that a *bona fide* doubt did arise on September 21, and the trial judge should at that time have complied with the statutory and due process requirements by conducting a hearing to determine defendant's competency. The significant factor compelling this conclusion is the apparently substantial change occurring in defendant's condition on or shortly prior to September 21, and Dr. Blackman's testimony with reference thereto. The doubt thus created cannot, we believe, fairly be said to have been dispelled by Dr. Smith's testimony, for his conclusions were admittedly mere impressions, formed without examining the defendant subsequent to the onset of the claimed amnesia.

Under these circumstances a new trial will be necessary. (See *People* v. *McLain,* 37 Ill.2d 173; *People* v. *Thompson,* 36 Ill.2d 332.) The judgment of the circuit court of Madison County is accordingly reversed and the cause remanded.

*Reversed and remanded.*