THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES CHAMBERS, Defendant-Appellant.

First District (3rd Division) No. 61764.

Opinion filed March 4, 1976.

James J. Doherty, Public Defender, of Chicago (John Thomas Moran, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant, Charles Chambers, appeals from a judgment entered after a trial without a jury, upon a finding of guilty of the charge of aggravated assault. He was sentenced to serve 6 months in the House of Correction with the direction that he there undergo psychiatric treatment. Upon appeal defendant contends the trial court (1) abused its discretion in not ordering a competency hearing on its own motion; (2) was without authority to order psychiatric treatment during his sentence; and (3) erred in permitting the original complaint to be amended at arraignment when defendant was not represented by counsel.

Defendant was charged with committing aggravated assault against one Sandra Hickman on January 9, 1975. He was arraigned on January 13, 1975, at which time he was advised of the nature of the charge, the possible penalties which could be imposed, and his rights as a defendant. When questioned, he stated that he understood the penalties and his own rights. When asked if he wished to be represented by an attorney, defendant stated that he could not afford one. The Public Defender was then appointed to represent him. At that time the prosecutor requested leave of court to amend the complaint from a charge of assault to aggravated assault with a deadly weapon. The prosecutor stated that the omission in the original complaint had been the result of a typographical error. The court permitted the complaint to be amended on its face, notwithstanding that defendant had not yet conferred with the Public Defender.

On February 19, 1975, defendant was informed by the trial court in the presence of the Public Defender that he was charged with aggravated assault. No objection was made to the amended complaint, nor was a motion made for a competency hearing. Defendant waived trial by jury and pleaded not guilty. The case immediately proceeded to trial.

At trial the Public Defender first brought to the attention of the court two reports which had been completed by the Psychiatric Institute of the Circuit Court of Cook County. The first report stated that defendant had been examined on February 3, 1975, and the diagnosis was "Schizophrenia, paranoid type." The report recommended that defendant be certified for involuntary commitment by the Illinois Department of Mental Health. The second report stated that he was reexamined on February 10, 1975, and that in addition to the original diagnosis it was further determined that defendant was "hostile, [with]drawn and unable to care for himself. He denied all symptoms, but his family is quite frightened by his threats in his unmanageable state. He is in need of hospitalization." The report concluded with a recommendation that defendant be certified for involuntary commitment. It was also brought to the court's attention that a civil commitment hearing was held on February 14, 1975, which resulted in defendant's being discharged back into the custody of the House of Correction. The Public Defender stated to the trial court that any information concerning the outcome of the civil commitment hearing would be hearsay concerning a determination of defendant's fitness to stand trial on the pending criminal charge. The court observed that a recommendation by the Psychiatric Institute for certification of defendant did not constitute a finding of his unfitness to stand trial, and held that all the available evidence, including the fact of defendant's discharge in the civil commitment hearing, demonstrated that he was fit to stand trial.

Sandra Hickman was called to testify. Defendant interrupted her preliminary testimony with the statement, "Your Honor, I will admit the charge, can I go to the hospital?" Sandra Hickman then stated that on January 9, 1975, defendant appeared in front of her home and shouted for her father, James Hickman, to come out of the house because he was going to kill him. Defendant then broke a glass pole lamp in the yard and kicked open the front door. Sandra Hickman's mother and younger sister fled into the basement while she ran out the back door. She stated that defendant chased her down the alley, shouting that he was going to rape and kill her and that he had a knife. She eventually eluded him and returned to her home. When she estimated how far defendant was from her when he made the threats defendant interjected, "I can outrun that dog any time." The witness stated that she had seen defendant around her home in the past and that he appeared to have a dislike for her entire family, rather than just her father. She said she had never spoken with defendant.

Defendant testified in his own behalf, and the direct testimony is set out at length.

"DEFENSE ATTORNEY: Mr. Chambers, on January 9, 1975, did you have occasion to see Miss Hickman, the lady over there?

DEFENDANT: Yes, I seen her, the bunch of them in the gate.

DEFENSE ATTORNEY: What happened when you first saw her, if anything?

DEFENDANT: They had water hoses and rakes out there picking their yard. I was passing to go to my cousin's house. She, this nigger over there called me over there. That is what he was at that time. This is what I have been reduced to, I admit that.

DEFENSE ATTORNEY: Who called you over?

DEFENDANT: This nigger over there.

DEFENSE ATTORNEY: Who are you referring to, do you know the name of the person that you are referring to?

DEFENDANT: A nigger, that is all I know. That is how I have been raised up.

DEFENSE ATTORNEY: You are referring to the man or woman?

DEFENDANT: It's the same thing, a nigger is a gang.

DEFENSE ATTORNEY: A man or woman, who are you referring to?

DEFENDANT: He is a part of a gang.

TRIAL COURT: He is referring to this gentleman with the plaid coat on. Your name is James Hickman?

DEFENSE ATTORNEY: What time did you see Mr. Hickman?

DEFENDANT: I was high at the time.

DEFENSE ATTORNEY: You were what?

DEFENDANT: High, you know alcoholic beverages.

DEFENSE ATTORNEY: What time of the day was this that you saw Mr. Hickman?

DEFENDANT: I would say about that time.

DEFENSE ATTORNEY: On January 9, 1975, did you see Miss Hickman, did you see her that day?

DEFENDANT: I don't know, they all look alike to me. I was high at the time. I don't know what time it was.

DEFENSE ATTORNEY: On that day, sir, do you recall chasing the young lady here, Miss Hickman?

DEFENDANT: Chase her, I been up in a jet airplane. What the hell am I going to chase a little girl—I been every damn where in the world. What in hell am I going to chase her for.

TRIAL COURT: He answered the question.

DEFENSE ATTORNEY: Or you can't—

DEFENDANT: Only thing I like about them, they got big lips, that is the only thing I like about them. Why in the hell am I going to chase something like that?

DEFENSE ATTORNEY: Have you ever talked to the lady here before, Miss Hickman?

DEFENDANT: That lady?

DEFENSE ATTORNEY: Yes, have you ever talked to her before?

DEFENDANT: I have never seen the lady. I am not worried about the charge.

DEFENSE ATTORNEY: You are not?

DEFENDANT: Hell no, I am not."

At the conclusion of defendant's direct examination his mother, Lizzie Chambers, was called to testify for the defense. She stated that defendant has had psychiatric problems in the past. The trial court sustained the prosecutor's objection to any further testimony by defendant's mother concerning defendant's past mental state.

Defendant was found guilty of aggravated assault and sentenced to a term of 6 months in the House of Correction. Additionally, the trial court specifically ordered that defendant receive hospital psychiatric treatment during his confinement. An objection by the Public Defender that the trial court was without authority to order treatment for defendant was overruled. The instant appeal was taken.

■■ It is first contended by defendant that the trial court erred in not ordering on its own motion that a competency hearing be held to determine his fitness to stand trial. To require an accused to stand trial at a time when he is not competent to do so constitutes a denial of due process of law. (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.) In Illinois the applicable test of whether an accused is capable of standing trial is his ability to understand the nature of the proceedings and to cooperate with his counsel. (*People v. Thompson* (1972), 3 Ill. App. 3d 684, 278 N.E.2d 1.) The standard is codified in Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1, which provides in pertinent part:

"(a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:

(1) to understand the nature and purpose of the proceedings against him; or

(2) to assist in his defense.

(b) The question of the defendant's fitness may be raised before trial or during trial. The question of the defendant's fitness

to be sentenced may be raised after judgment but before sentence. In either case the question of fitness may be raised by the State, the defendant or the court.

   (c) When a bona fide doubt of the defendant's fitness to stand trial or be sentenced is raised, the court shall order that a determination of that question be made before further proceedings."

In the instant case, neither the State nor defendant made a formal motion for a competency hearing. Yet, once facts are brought to the attention of the trial court which raise a bona fide doubt as to a defendant's fitness to stand trial, the court has a duty to hold a competency hearing on its own motion. (*People v. Thomas* (1969), 43 Ill. 2d 328, 253 N.E.2d 431.) Whether a bona fide doubt has been raised as to a defendant's fitness is a decision which rests within the discretion of the trial court. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630; *People v. Stanhope* (1969), 44 Ill. 2d 173, 254 N.E.2d 512.) Here, we hold that a bona fide doubt concerning defendant's fitness was raised and that the trial court should have ordered a competency hearing.

■■  At the start of trial, two Psychiatric Institute reports were brought to the attention of the trial court. Each report diagnosed defendant as a schizophrenic paranoid type and contained recommendations for defendant's involuntary commitment. The second of these reports further stated that he was unable to care for himself and in need of hospitalization. The trial court correctly observed that neither report indicated defendant was unable to understand the nature of the proceedings against him or to cooperate with defense counsel. Yet, while not indicative of unfitness to stand trial per se, these reports were a factor to consider together with other information in determining whether a bona fide doubt existed as to defendant's fitness. In finding no bona fide doubt as to defendant's fitness the trial court placed reliance upon the fact that defendant had previously been discharged into the custody of the House of Correction at the conclusion of a civil commitment hearing on February 14, 1975. Such reliance was misplaced in that a civil commitment hearing is to determine if an individual is in need of mental treatment. (See Ill. Rev. Stat. 1973, ch. 91½, par. 8—1.) The outcome of such a hearing does not necessarily indicate whether an individual possesses the mental capacity to stand trial on criminal charges. In addition to the Psychiatric Institute reports before the trial court, defendant's mother testified briefly that he had suffered from psychiatric problems in the past. Further inquiry into defendant's previous mental state was foreclosed when the trial court sustained the objection of the prosecutor. The testimony of defendant's mother was relevant to the question of his fitness to stand trial and further inquiry should have been permitted.

It is the defendant's own testimony, however, which creates the most serious question of his mental capacity to stand trial. He initially interrupted the testimony of the complaining witness with the statement that he admitted the charge and wished to be hospitalized. Later, in his own testimony, he asserted that he was not guilty. Moreover, his direct examination by counsel reflects on the whole an inability to reasonably communicate with counsel or to consider, correlate and narrate the occurrences involved within the offense charged.

■■ We conclude that the aggregate of the psychiatric reports, the brief testimony of defendant's mother and the undue restriction thereof, and defendant's own conduct and testimony at trial was sufficient to raise a bona fide doubt as to his fitness to stand trial. The trial court abused its discretion in failing to order on its own motion that a competency hearing be conducted. The difficulty of determining at a later date whether defendant was unfit at the time of his original trial necessitates the cause being reversed and remanded for both a competency hearing and a new trial.

■■ Since the judgment will be reversed and remanded for a new trial, we need not reach defendant's second contention that the portion of the trial court's order requiring psychiatric treatment is invalid. However, it is to be noted that the State has conceded that under section 5—8—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—6), the trial court was without authority to require that defendant undergo hospital psychiatric treatment during his term of confinement in the House of Correction.

■■ Defendant's final contention concerns the alleged error of permitting an amendment of the original complaint at his arraignment at a time when he had not yet conferred with counsel. The record reveals that immediately before trial the defendant was advised of the nature of the charge. The Public Defender was present and made no objection to the amendment either at arraignment or on the trial date.. Moreover, defendant does not argue, nor do we perceive that any prejudice resulted from the trial court's permitting amendment of the complaint at defendant's arraignment.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for a new trial, with directions to conduct a competency hearing preliminary thereto.

Reversed and remanded for new trial, with directions.

DEMPSEY and McGLOON, JJ., concur.