THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD A. BURNSIDE, Defendant-Appellant.

Second District No. 76-464

Opinion filed September 9, 1977.

---

[1] The State argues defendant feared reprisals because he believed Hobson's father to be a police department employee.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, and Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The defendant, Richard A. Burnside, was convicted of the offense of theft of property in excess of $150 value after a jury trial in Du Page County, Illinois, from which conviction he appeals after having been sentenced to one to three years in the Illinois Department of Corrections.

Two issues only are raised on this appeal: (1) Whether defendant was

proved guilty of theft beyond a reasonable doubt; and (2) Whether the defendant was fit to stand trial and to be sentenced. For purposes of this appeal, these two issues will be considered together, since the briefs for both appellant and appellee have admixed the two issues to the point that they are inseparable.

The facts in the case are: On August 16, 1975, the defendant entered the Carson, Pirie, Scott & Co. store at the Yorktown Shopping Center in Lombard, Du Page County, Illinois. The defendant went directly to the men's clothing department of the store and commenced selecting various items of clothing, and after he had accumulated some number of articles he went to an adjoining department and took a large suitcase without paying for same and returned to the men's clothing department where he continued to select clothing. A number of Carson, Pirie, Scott employees observed his course of conduct throughout his time in the store, which totaled something approximating one hour. Much of the clothing taken did not even fit the defendant. The defendant filled the suitcase, closed it, and commenced to leave the building. He was followed out of the building under surveillance by two security officers, who first demanded payment and then arrested the defendant. The defendant was indicted by the grand jury for felony theft, and the deputy public defender was assigned to defend him. A petition for a competency hearing was immediately filed on November 7, 1975, and notice of the petition for competency hearing was given to the prosecuting authorities. The deputy public defender filed a motion to withdraw as counsel for the defendant, alleging that the defendant refused to cooperate with him in the defense of his case. The motion to withdraw was denied. When the defendant learned that a petition for a competency hearing had been filed, he immediately demanded that the public defender withdraw the petition. However, that motion was on file for some period of time before it was withdrawn, and, of course, was always part of the court file. The case went to trial in March of 1975, and after a full hearing wherein the defendant testified, the jury returned a verdict of guilty. Upon the filing of a motion for a new trial, the public defender pointed out to the judge that some hearing should have been held regarding the fitness of the defendant to stand trial, and the judge indicated that this was his first knowledge he had of the defendant's alleged lack of capacity. Thereafter, a full-scale hearing was had, at which two psychiatrists testified as to the condition of the defendant, the court having called the matter a hearing to determine fitness to be sentenced. The two psychiatrists testified in diametrically opposite fashion, one psychiatrist stating that it was his opinion that the defendant was mentally ill, fitting into the general category of chronic psychosis, and that, accordingly, defendant was unable to appreciate the criminality of his acts and was unable to

cooperate with counsel in his defense. The other psychiatrist testified that in his opinion the defendant was not suffering from mental disability and that he was acting out in a pretense of incompetency. A considerable hearing was had, and the judge fully participated in the questioning of the two psychiatrists and at the end of the hearing, denied the motion by defendant to the effect that he was incompetent to be sentenced. We disagree with the trial court's conclusion that the defendant was competent to stand trial, and we find that the defendant was not accorded his rights inasmuch as he should have been rendered a hearing on his fitness to stand trial long before the hearing that he was given, which was immediately prior to sentence.

Some examination of the record in detail is necessary to substantiate our holding. From the very outset of the incident, when the defendant was engaged in placing the clothing in the suitcase in the retail store, he told the clerks that he believed "the merchandise would be covered for." He told the security officers upon his being arrested that he would "have to tell someone in authority" about the mistake made in his being arrested. At the trial, the defendant testified that he took the clothes because he believed that Carson's personnel were aware that he had full authority to take them. He further testified that he believed the clothing to be in payment for his achievements as a student of "religion, politics, science and whatnot." He further testified that "people often enough can walk into a store from their own village and obtain something free from the store for something they have done, or have ordered it and it is given to them free, depending upon the value of what they have earned." Defendant also testified that at the post-trial hearings he did not understand the charges against him or what he was being sentenced for. He also advised the court that he wished to make a telephone call to someone in authority to stop this, because nobody here understood that he had done nothing wrong and that it was degrading to have a psychiatrist call him incompetent and that if he could make a telephone call, someone in authority would come and bring the matter to a conclusion because the proceedings were in no way justice. It should be pointed out that the defendant at all times insisted that he was not crazy and had never been crazy, and he could not see why a fitness hearing should be held at all or why these charges had been brought against him. Defendant repeatedly said he failed to understand why he was being "dragged through a mess" since he had not done anything wrong and did not plan on doing anything wrong. The record in this case is replete with bizarre statements, conduct, reaction and outbursts which certainly should have convinced the trial judge that there was some serious question presented as to whether or not the defendant was fit to stand trial at all. In addition, the hearing had after the conviction was replete with

many instances of testimony by defendant and recitals by the psychiatrists which should have put the court on full notice that a serious question was raised concerning the ability of the defendant to understand the criminality of his act.

■■ It is well established that a trial judge has the responsibility for knowing the contents of the record of the case brought on for trial. In the instant case, while the motion for a competency hearing had been withdrawn, said motion was still a part of the court's file. When the bizarre series of events was testified to at the case in chief, it should have been immediately manifest to the court that serious question concerning the fitness of the defendant was present. A great part of the defendant's statements made to the court, both at the case in chief and at the fitness hearing, were simply outlandish and in and of themselves raised serious question as to the mental state of the defendant. The mere fact that the defendant entered a large department store in the presence of many employees and in full view commenced loading a suitcase with items for which he refused to pay, standing by itself, would not necessarily have been a conclusive factor in determining the fitness of the defendant. However, coupled with the repeatedly bizarre statements of the defendant to the court and the psychiatric testimony that was heard, it was clear that this defendant did not appreciate the criminality of his act, and the trial court should have immediately adjourned for a hearing. (*People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239.) In *Burson* the supreme court stated:

> "The statute providing for a sanity hearing does not, and was not intended to, abrogate the common-law rule that no person should be compelled to stand trial while insane. (*People v. Maynard*, 347 Ill. 422; *People v. Gavrilovich*, 265 Ill. 11.) A formal petition for such hearing prior to trial is unnecessary to afford a defendant the protection of the statute and his rights at common law." 11 Ill. 2d 360, 368, 143 N.E.2d 239, 244.

■■ An accused is ordinarily presumed to be sane. This presumption can be thought of metaphorically as a bubble. When evidence of insanity appears, the bubble bursts. Psychiatric testimony is not needed to burst this bubble. A lay witness can do it even without expressing an opinion that the defendant is insane. *People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.

■■■ While insanity is an affirmative defense, an affirmative defense can be raised by the State's own evidence. Regardless of who raises it, the State has the burden to prove the defendant guilty beyond a reasonable doubt as to that issue together with all other elements of the offense. (Section 3—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 3—2); *People v. Milligan* (1963), 28 Ill. 2d 203, 190 N.E.2d 753.) It

should be noted that it was the defendant's testimony at trial which caused the court to conduct a fitness hearing before sentence. This procedure comports with the applicable statutory provision found in section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1) which provides, *inter alia,*

"Fitness for Trial or Sentencing.

(a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable: (1) to understand the nature and purpose of the proceedings against him; or (2) to assist in his defense.

(b) The question of the defendant's fitness may be raised before trial or during trial. The question of the defendant's fitness to be sentenced may be raised after judgment but before sentence. In either case the question of fitness may be raised by the State, the defendant or the court.

(c) When a bona fide doubt of the defendant's fitness to stand trial or be sentenced is raised, the court shall order that a determination of that question be made before further proceedings."

However, the hearing accorded the defendant simply was far too late in the chronology of the proceedings since it was apparent from the outset that something was squarely in question concerning the fitness of the defendant. As stated, it is well established that this bona fide doubt can be raised by the evidence itself and that counsel need not present it. (*People v. Stanhope* (1969), 44 Ill. 2d 173, 254 N.E.2d 512.) A trial continued after this doubt is raised but not satisfied is in violation of due process of law. (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.) In *People v. Burson,* the supreme court well enunciated the long-standing law when it said:

"When, before or during the trial, facts are brought to the attention of the court, either by suggestion of counsel or the State, *or by its own observation,* which raise a *bona fide* doubt of the defendant's present sanity, a duty devolves upon the court to *then* cause a sanity hearing to be held as provided by law." (Emphasis added.) (11 Ill. 2d 360, 370, 143 N.E.2d 239, 245.)

It should be noted that in the instant case the court, in ordering a fitness hearing after the trial in chief and the finding of guilty had already been conducted to a conclusion, acknowledged that the testimony of the defendant was sufficiently unusual to raise a question in its own mind as to whether the defendant was either play-acting or, in fact, affected by some mental problem. Obviously, at the interval when the trial court became aware of this state of facts, it was the duty of the court to immediately conduct the fitness hearing. Obviously, this duty was heightened by the

fact that a petition to determine competency to stand trial had been filed but had been withdrawn at the irate insistence of the defendant. Fairness dictates that it be pointed out that the judge who permitted the withdrawal of the competency petition was not the same judge who conducted the trial and the subsequent proceedings. Nonetheless, the petition was in the court's file and, coupled with the testimony of the defendant and the factual pattern developed, certainly should have put everyone on full notice that a hearing to determine fitness was required. Indubitably, the deputy public defender owed both his client and the court a strong and continuing duty to bring the matter to a resolution long prior to the post-trial motion stage.

■■ The requirements of due process prohibit the trial of a person who is unfit. (*People v. Salvaggio* (1976), 38 Ill. App. 3d 482, 348 N.E.2d 243; *People v. Scott* (1969), 106 Ill. App. 2d 98, 245 N.E.2d 490.) When, before or during trial, facts are brought to the court's attention, be it through the suggestion of counsel, by the State, or through its own observation, that raise a bona fide question in regard to the defendant's fitness to stand trial, it is the duty of the trial court to conduct a hearing on the defendant's fitness to stand trial. (*People v. Slaughter* (1970), 46 Ill. 2d 114, 262 N.E.2d 904; *People v. Chambers* (1976), 36 Ill. App. 3d 838, 345 N.E.2d 119.) In the case at hand, the record is replete with instances that should have brought the defendant's fitness to stand trial into question. Therefore, when the trial court failed to perform its duty and conduct a fitness hearing, the trial court in effect denied the defendant his right to a fair trial. Therefore the defendant's conviction was invalid. Not having validly convicted the defendant, the State had no authority to sentence him. Therefore the hearing on the defendant's fitness to be sentenced is of no effect.

We hold that the defendant, Richard A. Burnside, did not receive a fair trial and we accordingly reverse his conviction and remand the cause to the circuit court of Du Page County to conduct a hearing on defendant's fitness to stand trial.

Reversed and remanded.

SEIDENFELD and NASH, JJ., concur.