WILLIAM HOPPS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

31 385
124 571
31 385
133 403
31 385
141 80
142 624
31 385
148 473
31 385
156 129

1. EVIDENCE—*proof of good character in capital cases.* Upon the trial of a party on the charge of murder, where the defense is insanity, it is competent for the defendant to give in evidence his uniform good character as a man and a citizen.

2. And it seems such evidence is admissible on the part of the defendant, in capital cases generally.

3. SAME—*proof that accused had committed another offense.* As a general rule, when a party is on trial upon a charge of murder, it is not competent for the prosecution to prove that years previously he had committed another offense, as, violating the revenue laws by smuggling. The proof should have no reference to any of the prisoner's conduct, not connected with the charge upon which he is being tried.

4. SAME—*exception to the above rule, dependent upon the defense.* But where the defense is insanity, and the coolness and unconcern of the prisoner at the time he committed the homicide are relied upon as justifying inferences favorable to the plea, it is competent to show that the prisoner had been in early years engaged in the perilous calling of smuggling, as tending to rebut the inference that his deportment on the fatal occasion was attributable to a want of sanity.

5. INSANITY—*of the character and degree that will acquit.* Where a party who is upon trial on an indictment for murder, interposes the defense of insanity, the rule in regard to the character and degree of insanity which would demand an acquittal, is thus laid down : that whenever it shall appear from the evidence, that at the time of doing the act charged, the prisoner was not of sound mind, but affected with insanity, and such affection was the efficient cause of the act, and that he would not have done the act but for that affection, he ought to be acquitted.

6. But this unsoundness of mind, or affection of insanity, must be of such a degree as to create an uncontrollable impulse to do the act charged, by overriding the reason and judgment, and obliterating the sense of right and wrong as to the particular act done, and depriving the accused of the power of choosing between them.

7. EVIDENCE—*burthen of proof in criminal cases.* When a defendant who is being tried upon a criminal charge, sets up insanity as an excuse for the act, he does not thereby assume the burthen of proof upon that question. Such a defense is only a denial of one of the essential allegations against him. Mr. JUSTICE WALKER, *dissenting.*

8. REASONABLE DOUBT *of the sanity of the accused, acquits.* And in sustaining such a defense, it is not necessary that the insanity of the accused be established even by a preponderance of proof; but if, upon the whole evidence, the jury entertain a reasonable doubt of his sanity, they must acquit. Qualifying the rule in *Fisher's case*, 23 Ill. 293. Mr. JUSTICE WALKER, *dissenting.*

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. GEORGE MANIERRE, Judge, presiding.

William Hopps was indicted in the court below for the murder of his wife. Being put upon his trial, the fact of the killing was clearly established, and was not controverted by the accused; but it was insisted in his behalf, that he was insane at the time of the commission of the act charged, and in reference to that question voluminous proofs were made both by the defense and the prosecution.

The trial below resulted in the conviction of the prisoner of the crime as charged in the indictment, and a new trial being refused, he brought the case to this court upon a writ of error.

The questions decided here, arise upon various rulings of the court below in admitting evidence on the part of the prosecution, and rejecting evidence offered by the defense; the grounds of alleged error in those rulings sufficiently appear in the opinion of the court.

Other questions arise upon the instructions of the court below, which are embraced in two propositions, *first,* What character and degree of insanity will excuse the commission of an alleged crime; and *second,* Must the fact of insanity,

when set up as a defense, be established by preponderating evidence. It is not necessary to the proper understanding of the rules laid down upon these questions to set forth here the voluminous instructions of the Circuit Court.

Messrs. McComas & Dexter, for the plaintiff in error.

Mr. W. K. McAllister, for the defendants in error.

Mr. Justice Breese delivered the opinion of the Court.

The plaintiff in error was convicted in the Cook Circuit Court, on an indictment for the murder of his wife. He brings the record here, complaining of several errors alleged ·to have been committed to his prejudice, the most important of which, we propose to notice.

He complains, first, that the Circuit Court would not permit him to give evidence of his uniform good character as a man and a citizen.

It was, at one time, a disputed question, whether such evidence could be given in a case where, as in this, the homicide is not denied. Some of the books say, such evidence, if offered, ought to be restricted to the trait of character in issue, or, in other words, should bear some analogy to the nature of the charge. 3 Gr. Ev., sec. 25.

To the same effect is 2 Russ. on Crimes, 784, but yet, he says, the good character of an accused party is an ingredient which should always be submitted to the consideration of the jury, along with the other facts of the case. Ib. 785.

In a case where the defense is insanity, we cannot have a doubt, that evidence of uniform good character as a man and a citizen, is proper for the jury to consider; whether a person whose character has been uniformly good, has, in a sane moment, committed the crime charged. It is undoubtedly true, a sane man, whose previous character has been unexceptionable, may commit an atrocious homicide, no doubt may exist of the fact, yet, under his plea of insanity, should he not be entitled to all the benefit which may be derived

from the fact of uniform good character, as tending, slightly, it may be, to the conclusion that he could not have been sane at the time the deed was done. Generally, a person of good character does not, of a sudden, fall from a high position, to the commission of outrageous crimes; should he do so, would it be an unnatural or forced inference, that he may have been affected with insanity at the time? But be this as it may, it seems to be now settled, that such evidence in capital cases, is admissible. In the case of the *Commonwealth* v. *Hardy*, 2 Mass. 317, which was a capital case, PARSONS, Ch. J., said, a prisoner ought to be permitted to give in evidence his general character in all cases. SEWELL and PARKER, justices, said, they were not prepared to admit that testimony of general character should be admitted in behalf of the defendant, in all criminal prosecutions; but, they were clearly of opinion, that it might be admitted in capital cases in favor of life. The same rule was stated in the case of the *Commonwealth* v. *Webster*, 5 Cushing, 325. The court there say, it is the privilege of the accused, to put his character in issue or not.

In 2 Bennet and Heard's Leading Cases, 159, and notes, the cases are collected and commented on, in which this rule is recognized.

In the case of *The People* v. *Vane*, 12 Wendell, 78, the court held, that evidence of the good character of the defendant on the trial of an indictment, is always admissible, though it cannot avail when the evidence against him is positive and unimpeached; but when the evidence is circumstantial, or comes from a suspected or impeached witness, proof of good character is important.

We think, at least in view of the defense relied on, the evidence of the prisoner's uniform correct bearing, as a man and a citizen, should have been made known to the jury. A good character is a most precious possession, and it ought to be permitted, in favor of life at least, to go to the jury.

The plaintiff in error also complains, that the prosecution was permitted to prove that about thirty years before the commission of the crime charged, he had been engaged in a violation of the revenue laws of the country, by a career of smuggling

goods and property, to and from Canada. The prisoner insists it was not competent to prove this offense against him ; that all the facts proper to be proved, should be strictly relevant to the particular charge, and have no reference to any of his conduct, not connected with the charge.

This is undoubtedly true as a general principle, but we think such proof was warranted in this view. The defense being insanity, the coolness and unconcern of the prisoner at the time he did the fatal act, was made a prominent feature in the case, and inferences were sought to be drawn from it, favorable to the plea.

Is it possible, ask his counsel, that a man who could show so much coolness, self-possession and apathy, at the moment and after the fatal deed, could be otherwise than insane ? To this the people reply, the prisoner had spent years of his early life in a perilous calling, demanding, at all times, great coolness and hardihood, and therein, had educated his nerves to withstand any shock; in such a school he learned the deportment exhibited by him on the fatal occasion. To account for this coolness and unconcern, the testimony of Beardsley and Phelps was properly received, it being in the nature of rebutting evidence on the point made.

But these are small points, compared to those we must consider.

The prisoner complains, that the court did not lay down to the jury, correctly, the law of his case. That he was prejudiced by the charge of the court, not coming up, as he alleges it should have done, to the true principles involved in it, by which guilt was established in a case where guilt could not exist, and for which his life must be forfeited, if this court has no corrective power.

The homicide stands confessed. It has never been denied by the prisoner; on the contrary, he declared on its commission, that it had been long contemplated and was right; that his wife was unchaste. After his arrest, he justified the deed, and has, throughout, exhibited total indifference and unconcern.

His counsel say for him, he was not of sound mind when

the deed was done, and the court, trying the cause, gave to the jury, at great length, its views of the nature of the defense, and prescribed the rule which should govern them in the decision of the case.

We do not propose to examine, in detail, the several instructions given by the court for the prosecution, or those refused when asked by the defense. We are not fully convinced what the rule, or tests, should be in such cases. The results of scientific investigation on this intricate subject, are so imperfect as to render it very difficult to establish any general rule, by which judicial proceedings of a criminal nature should be governed, when the defense of insanity is interposed. Writers on the subject treat of several different kinds of insanity, and of different degrees of the several kinds, and among them, there is considerable diversity of opinion on the same point. They furnish, as yet, no true and safe guide for courts and juries, but it is hoped as science advances, a rule will be eliminated, which, whilst it shall throw around these poor unfortunates a sufficient shield, shall, at the same time, place no great interest of community in jeopardy.

It is now generally conceded, that insanity is a disease of the brain, of that mass of matter through and by which that mysterious power, the mind, acts. There, the mind is supposed to be enthroned, acting through separate and distinct organs. These organs may become diseased, one or more or all, and in the degree, or to the extent of such disease, is insanity measured. A disease of all the organs, causes total insanity, while of one or more, partial insanity only. There is, it seems, a general intellectual mania, and a partial intellectual mania, and a moral mania, which is also divided into general and partial. It is claimed for the prisoner, that the species of insanity with which he is afflicted, is of the partial intellectual order, denominated monomania; that is to say, a mania on one subject, and that subject, the infidelity of his wife, in which his belief, without the least ground to base it upon, was so fixed as to become a deep-seated delusion amounting to mania. In the simplest form of this species of mania, the understanding appears to be tolerably sound on all subjects

but those connected with the hallucination. Ray's Med. Jur. 164.

Premising these, it is truly said, it has been found difficult to establish any general rule under which all these varieties of insanity may be safely included and controlled, when such a defense is made.

The rule prevailing in the times of Lord COKE, HALE, and other luminaries of the law, in its not most enlightened days, was, that to exempt from punishment, the party charged must be totally deprived of his understanding and memory. As science advanced, and closer investigations were had upon this subject, it was held, if the accused had so far lost the use of his understanding as not to know right from wrong, he was not responsible, and this rule has been so far modified as to be applied to the precise act for which the prisoner may be indicted.

This rule seems to have been adhered to by the English courts, and by some of the courts of this country, with occasional departures only, as in *Hadfield's case*, and other cases commented upon in notes to 1 Leading Criminal Cases, 93. In *Hadfield's case*, tried before Lord KENYON, in 1800, it was held, if the accused was laboring under a sincere and firm delusion, that it was his duty to do the act charged, and it was done under the influence of such delusion, he was not responsible. Yet in *Billingham's case*, tried before Sir James MANSFIELD, in 1812, reported in 5 Carr. & Payne, 169, the old rule of Lord HALE's time, was announced and enforced, and an undoubted lunatic condemned to the gallows.

We do not propose to go into an examination of the various decisions, English and American, on this subject, it being sufficient to say, that no certain, uniform and definite rule, can be gathered from them. In the midst of this uncertainty, with the best reflection and examination we have been able to give to this very important and most interesting question, we have come to the conclusion, that a safe and reasonable test, in all such cases, would be, that whenever it should appear from the evidence, that at the time of doing the act charged, the prisoner was not of sound mind, but affected

with insanity, and such affection was the efficient cause of the act, and that he would not have done the act but for that affection, he ought to be acquitted. But this unsoundness of mind, or affection of insanity, must be of such a degree as to create an uncontrollable impulse to do the act charged, by overriding the reason and judgment, and obliterating the sense of right and wrong as to the particular act done, and depriving the accused of the power of choosing between them. If it be shown the act was the consequence of an insane delusion, and caused by it, and by nothing else, justice and humanity alike demand an acquittal. Our statute was designed to ameliorate the rigor of the old rule of the common law, in declaring that a person " affected with insanity," shall not be considered a fit subject of punishment, for an act done, which, under other circumstances or disposition of mind, would be criminal. The rule we have endeavored to prescribe, seems to fulfil this demand of the statute.

Another question remains as to the proof necessary in such cases, and the duty of the jury thereupon.

In this case the court instructed the jury, if the act was proved to their satisfaction, by the weight and preponderance of evidence, to have been one of insanity only, the prisoner was entitled to an acquittal, though the defense should not be proved beyond all reasonable doubt.

This instruction greatly modifies the old rule; but it does not, in our judgment, announce the true principle in criminal cases. In every criminal proceeding before a jury, without any exception, if a reasonable doubt is entertained of the guilt of the accused, the jury are bound to acquit. Now, what is essential to the commission of a crime? Our statute declares, to constitute crime, there shall be an union or joint operation of act and intention, or criminal negligence. The overt act is one ingredient, the intention another, and their union is indispensable to constitute guilt. Intention is proved by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused. The killing alone, under the most aggravated circumstances, will not suffice, if sound mind and discretion be

wanting. Sound mind is presumed, if the accused is neither an idiot, lunatic, "nor affected with insanity." If he be affected with insanity, then sound mind is wanting, and crime is not established. Sound mind, or sanity, then, is an ingredient in crime, quite as essential as the overt act. Who will deny, if there be a reasonable doubt as to the overt act, that the jury are bound to acquit? Equally imperative must be the rule, if a reasonable doubt be entertained as to the sanity of the prisoner. Sanity is guilt, insanity is innocence; therefore, a reasonable doubt of the sanity of the accused, on the long and well-recognized principles of the common law, must acquit. Suppose the question was one of identity, would not a reasonable, well-founded doubt on the point, acquit the prisoner? Suppose an *alibi* was sought to be proved, and proof sufficient was offered, to create a reasonable doubt whether the accused was at the place, and at the time, when and where the offense was alleged to have been committed, is not the prisoner entitled to the benefit of the doubt? So, if the defense be that a homicide was justifiable or excusable, is not the principle well settled, a reasonable doubt will acquit? The rule is founded in human nature, as well as in the demands of justice and public policy. Innocence is the presumption, guilt being alleged, the State making the charge is bound to prove it; the State is bound to produce evidence sufficient to convince the mind of the guilt of the party. If a reasonable doubt is raised, then the mind is not convinced, and being in that unsettled state, whatever the probabilities may be, a jury cannot convict. It is entirely impossible for them to say the accused is guilty, when they entertain a reasonable doubt of his guilt.

It is urged by the prosecution, that the burden of proof is on the accused, to make out his defense. That sanity being the normal condition, insanity must be established by preponderating evidence.

We do not understand the burden of proof is shifted on the defendant. Every man charged with crime, is entitled to claim the benefit of all the provisions of the law. In every case of murder the first inquiry is, has the homicide been

committed—did the prisoner do the deed—did he intend to do it—was he of sound mind and not affected with insanity when the act was done, and was the act done with malice aforethought, express or implied? These are, all of them, affirmative facts, and must be proved by the prosecution. The State avers their existence—they are all essential to constitute the crime, and the State must prove them—the burden of proof is on the State. But it is said, the State is relieved of the burden by proving the prisoner did the act, the law implying that he intended to do it, and that the presumption is, every man is of sound mind. These are but presumptions, and when they are rebutted by proof of absence of criminal intention, by reason of unsoundness of mind, or a reasonable doubt is raised on the point, that doubt must avail the prisoner. Can it be properly said, in criminal cases the burden of proof ever shifts, so long as the defendant bases his defense on the denial of any essential allegation in the indictment? We think not. The prosecution is bound, on every principle of correct pleading, and of justice, to maintain their allegations; and it is not in their power to shift the burden on to the defendant. *Commonwealth* v. *McKie*, 1 Gray (Mass.) 61. The presumption of innocence is as strong as the presumption of sanity. The burden of proof must, therefore, always remain with the prosecution to prove guilt beyond a reasonable doubt—a serious and substantial doubt, not the mere possibility of a doubt.

The rule here announced, differs from that laid down in *Fisher's case*, 23 Ill. 293. In that case we said, sanity being the normal condition, it must be shown by sufficient proof, that from some cause, it has ceased to be the condition of the accused. The opinion in that case, was prepared under peculiar circumstances not admitting of much deliberation, and this point was not pressed upon the attention of the court, or argued at length. Further reflection has satisfied us, it was too broadly laid down, and that justice and humanity demand, the jury should be satisfied, beyond a reasonable, well-founded doubt, of the sanity of the accused. The human mind revolts at the idea of executing a person whose guilt is

not proved, a well-founded doubt of his sanity being entertained by the jury.

In these views we are supported by the cases of *The State* v. *Marler*, 2 Alabama, 43; *The People* v. *McCann*, 2 Smith (N. Y.) 58; *Polk* v. *The State*, 12 Ind. 170. Other cases may, no doubt, be found to the same purport. Be the cases few or many, the principle is, nevertheless, correct.

The judgment of the Circuit Court is reversed, the cause remanded, and a *venire de novo* awarded.

Separate opinion by Mr. CHIEF JUSTICE CATON.

While I concur with my brother BREESE, I may be permitted to make a few suggestions upon a single point in this case.

It is a general rule in all criminal trials, that if, from the whole evidence, the jury entertain a reasonable doubt, it is their duty to acquit; and the reason is, that it is better that many guilty persons should be acquitted, than that one innocent person should be convicted. The bare possibility that a person about to be executed is innocent of crime, produces a shudder in every one who is not callous to all sense of justice and humanity; and the all-pervading sentiment of civilized man demands this rule. Does humanity less demand it in a case where the defense is insanity, than where it is excusable or justifiable homicide? Is it any less revolting to an enlightened humanity to hang an innocent crazy man than one who is sane? His very helplessness commends him to the commiseration of mankind. One who is indicted for murder says, true, I killed the man, but I did it in necessary self-defense, shall be acquitted if he can raise a reasonable doubt on this question, although the preponderance of evidence is, and the probabilities are, that he was the attacking party, and pursued his victim unto death, with malice aforethought; and shall it be said, when the same doubt exists as to the sanity of the prisoner, he shall be convicted and executed? The very suggestion is shocking to a sense of even-handed justice.

The question at last returns, is the prisoner guilty or not guilty ? If there is a reasonable doubt of his guilt, he must be acquitted. If there is such doubt of malice, all agree that he must have the verdict. If he was insane, there could be no malice, and hence, to raise a doubt of sanity is to raise a doubt of malice. Sanity is as necessary to guilt as any other fact, and if there is a reasonable doubt of that, there must be a doubt of guilt. Why should there be an exception to this otherwise universal rule ? I can see none in reason, and it is against the fundamental principles of the law. The old common law is silent on this subject. It is only in modern times that the question has arisen, and the first who held that insanity was an exception to the rule, overturned the rule itself, but they could not abolish or destroy it. It still remains, and I trust, will ever remain an immovable monument to the civilization and humanity of our age and country.

It is said, insanity may be simulated. So may any other fictitious defense be got up to screen the guilty. The evidence in this case is, that it is exceedingly difficult to simulate insanity so as to avoid detection. It is but very lately that insanity has become a subject of careful scientific investigation, which has made, and is making, rapid progress. This investigation enables experts to detect simulated insanity with much more certainty than could formerly be done.

Shall we ignore and denounce the results of human study and research on this subject, while we recognize and applaud the advancement of science in all other directions ? Peoples and governments in all civilized countries recognize them by the erection of vast asylums for these unfortunates, where this science can be carefully studied by those who will devote their lives to the investigation of this subject, where very many, by careful scientific treatment, are restored, and become useful members of society. To say that men by careful study and investigation can acquire no skill on this subject, while the same study and investigation will constantly develop new truths on all other subjects, would be a daring assumption upon which we cannot consent to hang a fellow man. At the time this question was first brought before the courts, it

may be that it was in some cases difficult to detect simulated insanity, and thus the courts may have been induced to overturn the well established law to meet the apprehension, but this danger, to say the least, is very much diminished now.

I am well convinced that we should adhere to the old and well established rules.of the criminal law, and that we should require, at least, as much evidence to convict a crazy man as a sane one.

Separate, and partially dissenting, opinion of Mr. JUSTICE WALKER.

I am unable to concur in all of the reasons assigned by the majority of the court, for reversing this judgment. On the question of the measure of proof necessary to a conviction, where the plea of insanity is interposed, there may be a conflict in the authorities, but it will be found that the current, in fact all but two cases, so far as I can find, establish the rule, that the plea must be established by at least a preponderance of evidence. It is a presumption lying at the foundation of jurisprudence, as well as all the business relations of life, that all men are of sound mind. This proposition cannot be controverted, and to be avoided must be rebutted by evidence.

The plea of insanity, like all other special pleas, confesses the act charged and avoids its consequences, by showing circumstances which establish a defense. This defense, like every other plea which confesses and avoids, must be proved. And in analogy with the practice under special pleas generally, the proof must devolve upon the party interposing the defense. In this defense the accused admits the homicide, but alleges, that he was incapable of distinguishing right from wrong at the time, owing to mental derangement. Having averred the facts necessary to his defense, and being required to establish the truth of his plea, can it be said that he has done so, when he has only rendered it doubtful whether he was sane or insane? This plea, like all other affirmative facts, is capable of satisfactory proof. It cannot be that a person is so

far insane as not to know right from wrong, and yet those with whom he associates be ignorant of the fact. Such cases cannot occur among people of ordinary intelligence and observation.

In the case of *Regina* v. *Oxford*, 9 C. & P. 525, Lord Chief Justice DENMAN announced the rule, that all persons must be taken, *prima facie*, to be of sound mind until the contrary is shown. He says, "the question is, whether the prisoner was laboring under that species of insanity that satisfies" the jury "that he was quite unaware of the nature and consequences of the act he was committing, or, in other words, whether he was under the influence of a diseased mind, and was really unconscious, at the time he was committing the act, that it was a crime." It is here distinctly announced that the jury must be satisfied, and not merely left in doubt, of the truth of the plea. He says nothing about any species of doubt as to its truth.

In Great Britain, as late as in June, 1843, a series of questions was propounded to the fifteen judges, on the subject of th   defense of insanity, to which they returned answers. In answer to the second question, they say the jury ought, in all cases, to be informed, that every man should be considered of sound mind until the contrary is clearly proved in evidence. "That before a plea of insanity should be allowed, undoubted evidence should be adduced, that the accused was of diseased mind, and that, at the time he committed the act, he was not conscious of right and wrong." Wheat. Crim. Law, 46. This answer of all the judges of England clearly establishes the rule of law in the courts of that country to be, that the accused must prove this defense of insanity, by undoubted evidence of its truth. It is believed that no well considered case can be found, decided in any British courts, announcing a different rule.

In the case of *Fisher* v. *The People*, 23 Ill. 283, this court announced the rule, that "Before such a plea can be allowed to prevail, satisfactory evidence should be offered that the accused, in the language of the criminal code, was "affected with insanity," and, at the time he committed the

act, was incapable of appreciating its enormity." The rule here announced is a modification of the rule of the British courts, and accords with the current of decisions in this country. Whilst this is not the uniform rule of the American courts, yet it has been announced by a large majority. This rule seems to accord with reason and justice, and is well calculated to protect community against the perpetration of crime, insure the accused of a fair trial, and is in accordance with the analogies of the law.

Experience teaches us, that insanity is readily simulated, to the extent of creating a doubt in the minds of those who have no opportunity, by associating with the accused, of detecting the fraud. If the rule announced by the majority of the court, becomes the established law, I have grave apprehensions that it will be found a ready means of screening the guilty from merited punishment, and will operate injuriously upon society. It appears to me that the well being of society, the prevention of crime, and justice to the people, all require that the rule in *Fisher's case* should be no further relaxed.

I, however, concur with the majority of the court in holding that the accused was entitled to give evidence of his previous good character. This seems to be held to be evidence that the accused may resort to, and have considered by the jury. Its weight in many cases may justly be of great moment to him, whilst in others entitled to but little weight. It, like all other evidence, must be left to the consideration of the jury, to be weighed in connection with all the other testimony in the case. We are not able to say what its effect might have been had it been admitted.

The court below therefore erred in rejecting this evidence.

*Judgment reversed.*