THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILBERT A. HALL, Defendant-Appellant.

(No. 58864; 

First District (3rd Division)—April 4, 1974.

Paul Bradley, Deputy Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant Wilbert Hall was indicted on four counts of aggravated battery and two counts of attempt murder. He was charged with two counts of aggravated battery and one count of attempt murder for the attack on Norma Boose and two counts of aggravated battery and one count of attempt murder for the attack on Susan Boose. After a bench trial in the circuit court of Cook County defendant was found guilty on all counts of aggravated battery and one count of attempt murder. He was found not guilty on the second count of attempt murder. For the two counts of aggravated battery and one count of attempt murder of Norma Boose, he was sentenced from 5 to 20 years. For the two counts of aggravated battery of Susan Boose, he was sentenced from 1 to 10 years. The sentences were concurrent. Defendant appeals.

He has presented one issue for review. He contends that the prosecution failed to carry its burden of proof on the issue of whether defendant was criminally responsible for his conduct. Although defendant testified to being elsewhere at the time the crimes were committed, he raised the affirmative defense of insanity and this was the theory of his defense.

We affirm.

The complaining witness, Mrs. Norma Boose, defendant's aunt, testified that on January 11, 1972, at about 4 P.M. defendant telephoned her at her house at 1325 Marengo, Forest Park, Illinois. He wanted to borrow $10 from her and she consented. Defendant arrived at her house at about 5:30 P.M. At this time only she and Susan Boose, her 14-year-old daughter, were at home. Mrs. Boose was cooking in the kitchen. Susan was in the basement.

Defendant was sitting at the kitchen table, drinking a cup of coffee. His aunt was standing opposite him at the table kneading on dough. A few minutes later, unexpectedly and apparently unprovoked, defendant got up, walked over to where his aunt was standing, and stood close behind her. She turned around and asked him what he wanted. Defendant grabbed for her throat, backed her against the kitchen sink and began choking her. As she was trying to push him away, he apparently cut her with a knife on the right index finger. She was unable to scream. Defendant then stabbed her three times in the chest area, once in each breast, and once in the middle of the chest. At this point Susan, her

daughter and defendant's cousin, came upstairs. Her mother shouted for her to call the police. As Susan went to the telephone in the kitchen, defendant chased her and began fighting with her. Mrs. Boose told her daughter to go to the neighbors. The daughter screamed and ran from the kitchen into the dining room. Mrs. Boose ran after her to the front door. Defendant was following her. Before Mrs. Boose reached the front door she fell. She heard the back door close, got up, and telephoned the neighbors.

The police arrived shortly thereafter. Mrs. Boose felt the pain in her back and the police discovered she had a knife sticking in her back. At the hospital the knife was removed. At trial she identified the knife as one that was in her kitchen on the afternoon in question. The court admitted the knife into evidence.

Susan Boose gave similar testimony as to that part of the episode which took place after she came upstairs from the basement. She further testified that as she was about to use the telephone to call for help, defendant stabbed her once in the left arm and once in the chest. She then ran out the front door and went to a neighbor's house.

Defendant testified as to his whereabouts on January 11, 1972. He went to a tavern in Berwyn, Illinois at 1 P.M. He stayed until about 1:45 P.M. He then went to another tavern. He arrived there at 2 P.M. and stayed until 5:30 P.M. He then walked to a restaurant, ate something, and walked to his girl friend's house. He arrived there at about 6:27 P.M. and remained until 10:30 P.M. At that time Officer Hinz of the Forest Park Police Department arrested defendant pursuant to an arrest warrant. Defendant remembered telephoning his aunt at 5 P.M. that day, asking her to lend him $10, and not being refused. Aside from the telephone conversation defendant did not remember any other contact with his aunt that day.

The remainder of defendant's testimony concerned his personal history. During defendant's testimony, Dr. Werner Tuteur, a psychiatrist, was present in the courtroom. Defendant called Dr. Tuteur as an expert witness. Dr. Tuteur gave his medical opinion as to defendant's state of mind at the time of the stabbings. Pursuant to a court order he had examined defendant on July 9, 1972, at the Cook County Jail for over an hour. His findings were that defendant was generally suspicious; that he was disturbed about his habit of stealing female undergarments, wearing them, and obtaining sexual gratification from this behavior; and that he was particularly hostile towards his relatives who knew this and whose undergarments he took. Defendant's previous testimony revealed that from the age of 8 or 9 he had the habit of stealing women's clothing from his aunt, Norma Boose, and his stepmother. He felt that Norma

Boose informed on him about this habit. As a result he was eventually sent to St. Charles reformatory at age 12. His parents had been the complainants in the proceedings which resulted in this confinement. The doctor's further findings were that defendant did not trust anyone and had never entered a meaningful relationship with anyone.

The doctor diagnosed defendant's illness as paranoid state. He characterized defendant as psychotic. He further testified that defendant's illness could manifest itself by irrational and impulsive behavior and he found a specific hostility toward the aunt. The doctor did not find defendant to be suffering from any kind of brain damage. Defendant's personality was characterized by hostility, suspicion, personal unhappiness, withdrawal from society, and the possibility of explosive behavior.

In response to hypothetical questions, the doctor responded that at the time of the stabbings defendant lacked the capacity due to mental illness to realize the criminality of his acts, and that defendant lacked the capacity to conform his conduct to the requirements of law at that time.

Dr. Richard Malek, a psychiatrist, testified for the prosecution in rebuttal. He had examined defendant three times before trial. Before these examinations he had access to defendant's social history which was obtained from friends and relatives, reports of the alleged victims' testimony, and results of psychological tests and psychological interviews. He diagnosed defendant's illness as antisocial personality disorder. He found defendant was neurotic as opposed to psychotic. He further found that defendant was not psychotic at the time of trial and never had been psychotic. In response to hypothetical questions, he responded that defendant could appreciate the criminality of his conduct at the time of the stabbings and did have the substantial capacity to conform his conduct to the requirements of law at that time.

George Lundt, defendant's parole officer, also testified in rebuttal. He testified that defendant was not a problem client. He further testified that defendant did not tell him about any of his problems nor did he reveal any hostility towards his relatives.

Bonnie Chodl, defendant's girl friend at the time of the stabbings, also testified in rebuttal. She testified that while they were dating she thought their relationship was normal and that his general behavior seemed normal. When defendant arrived at her house on the night in question at about 6:27 P.M. it was her further opinion that he was sober.

After having heard all the evidence, the trial court found defendant guilty on four counts of aggravated battery and one count of attempt murder. The trial court thought that the only issue in the case was defendant's responsibility at the time of the offenses.

■■ On appeal defendant's argument relates solely to whether the prosecution carried its burden of proof on the issue of defendant's mental capacity at the time of the commission of the offenses. Defendant correctly points out that once he introduced some evidence on the issue of his sanity at the time of the commission of the offenses, the prosecution had the burden of proof on that issue in addition to its burden of proof on the other elements of the offenses. Ill. Rev. Stat. 1971, ch. 38, sec. 3—2; *People v. Gold*, 38 Ill.2d 510, 232 N.E.2d 702, *cert. denied*, 392 U.S. 940.

■■ In the instant case the presumption that defendant was sane at the time of the offenses disappeared when defendant introduced the opinion testimony of a psychiatrist and a burden of proof arose for the prosecution on this issue. A psychiatrist and two laymen testified for the prosecution in rebuttal and gave opinion testimony contradictory to that offered by the defendant. Resolution of the resulting conflict was a matter for the trier of fact. (*People v. Muniz*, 31 Ill.2d 130, 198 N.E.2d 855.) We will not disturb the finding of the trier of fact on this issue unless it was the result of passion or prejudice. (*People v. Ford*, 39 Ill. 2d 318, 235 N.E.2d 576.) We have reviewed the record and on the basis of all the evidence presented we find sufficient evidence to support the trial court's finding that defendant was responsible for his conduct on the afternoon of January 11, 1972. See *People v. Lassiter*, 133 Ill.App.2d 353, 273 N.E.2d 166.

Defendant further argues that the trial court by his remarks attempted to shift the burden of proof to him. He contends the trial court placed upon him the burden of proving insanity beyond a reasonable doubt. This argument is predicated on the taking of certain comments of the judge out of context and has no merit.

Accordingly, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

McNAMARA, P. J., and MEJDA, J., concur.