THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BILLIE GENE HIGHTOWER, Defendant-Appellant.

Fifth District No. 5—86—0594

Opinion filed July 26, 1988.

Philip R. Rice, of Rice Law Offices, of Belleville, for appellant.

Charles Garnati, State's Attorney, of Marion (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CALVO delivered the opinion of the court:

The circuit court of Williamson County sentenced defendant, Billie Gene Hightower, to 25 years of imprisonment after a jury found defendant guilty of the murder of his wife, Cathy C. Hightower. Defendant alleged that he was insane at the time of the commission of the offense. Both parties presented expert testimony regarding defendant's sanity, and the jury was instructed, pursuant to section 3—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 3—2), that defendant had the burden to prove by a preponderance of the evidence that he was not guilty by reason of insanity. The sole issue defendant presents on appeal is whether section 3—2 (Ill. Rev. Stat. 1985, ch. 38, par. 3—2) violates the due process provisions of the United States Constitution and Illinois Constitution.

Prior to 1984, section 3—2 read as follows:

"(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

(b) If the issue involved in an affirmative defense is raised then *the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue* together with all the other elements of the offense." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 3—2 (hereinafter old section 3—2).)

The Illinois legislature changed the statute in 1984 to provide the following:

"(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

(b) If the issue involved in an affirmative defense, other than insanity, is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. If the affirmative defense of insanity is raised, *the defendant bears the burden of proving by a preponderance of the evidence his insanity at the time of the offense.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 3—2 (hereinafter new section 3—2).)

Defendant argues that the change in the law is unconstitutional be-

cause it places the burden on the defendant to prove his insanity when the State has the burden to prove all of the elements of the offense against a defendant. The State essentially argues that sanity is not an element of the crime, so that the statute does not unconstitutionally shift the burden of proof.

■ We hold that section 3–2 does not offend the due process clause of the United States Constitution. The familiar passage of the Constitution states that no one shall be deprived "of life, liberty, or property without due process of law." (U.S. Const., amend. XIV.) In 1952, the Supreme Court upheld an Oregon statute which required a defendant to prove his insanity beyond a reasonable doubt. (*Leland v. Oregon* (1952), 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002.) Eighteen years later, the Court held that the due process clause of the Constitution required the State to prove beyond a reasonable doubt every element of a crime charged against a defendant. (*In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068; *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881.) In 1976, the Delaware Supreme Court followed *Leland* and upheld the constitutionality of its statute which required a defendant to prove his or her insanity by a preponderance of the evidence. (*Rivera v. Delaware* (Del. 1976), 351 A.2d 561.) The Supreme Court refused to review *Rivera* for lack of a substantial Federal question. (*Rivera v. Delaware* (Del. 1976), 351 A.2d 561, *appeal dismissed* (1976), 429 U.S. 877, 50 L. Ed. 2d 160, 97 S. Ct. 226.) One year later, the Supreme Court refused to reconsider either *Leland* or *Rivera*. (*Patterson v. New York* (1977), 432 U.S. 197, 207, 53 L. Ed. 2d 281, 290, 97 S. Ct. 2319, 2325.) Some State and Federal courts have interpreted the Court's actions in *Rivera* and *Patterson* to mean that *Leland* does not violate the due process requirement established in *Winship* and *Mullaney*. (See *Boswell v. State* (1979), 243 Ga. 732, 732, 256 S.E.2d 470, 471; *Price v. State* (1980), 274 Ind. 479, 483, 412 N.E.2d 783, 785; *In re Certified Question* (1986), 425 Mich. 457, 468, 390 N.W.2d 620, 624; *State v. Bowling* (1986), 151 Ariz. 230, 232, 726 P.2d 1099, 1101; *Grace v. Hopper* (5th Cir. 1978), 566 F.2d 507, 509; *Nelson v. Hutto* (8th Cir. 1979), 597 F.2d 137, 138.) One Illinois appellate court has just recently held that section 6–2(e) (Ill. Rev. Stat. 1985, ch. 38, par. 6–2(e)), which simply reiterates the burden of proof standard for insanity contained in section 3–2, is constitutional under the due process clause of the United States Constitution pursuant to *Rivera* and *Patterson*. (*People v. Martin* (1988), 166 Ill. App. 3d 428, 436, 519 N.E.2d 1085, 1090.) We, likewise, hold that based on this line of Supreme Court cases, section 3–2 does not offend the due process

clause of the United States Constitution.

■ Even though section 3—2 passes muster under the United States Constitution, it may still be violative of the Illinois Constitution. A "state cannot deny a right or impose a liability which is contrary to the federal concept of due process," but it can "create [additional] protections for its citizens which might not be required under the federal concept." (*People v. District Court for County of Jefferson* (1968), 165 Colo. 253, 261, 439 P.2d 741, 745.) Consequently, we must decide whether our State's due process right, as interpreted by our courts, establishes stricter guidelines in this area of the law such that section 3—2 violates our constitution. We note that this case presents for the first time the issue of whether this statute violates the due process provision of our State Constitution.

■ The Illinois Constitution contains the exact language found in the due process clause of the United States Constitution; namely, that no person shall be deprived "of life, liberty or property without due process of law." (Ill. Const. 1970, art. I, §2.) This, however, does not end our inquiry. Although the language of the two constitutions is the same, the scope of Illinois' due process provision need not be identical to that of the United States Constitution. As we just noted, the constitution of Illinois affords *no less* protection than the United States Constitution, but it may provide more protection.

The State argues that the constitutions of Illinois and the United States guarantee equal due process rights. The State points to *Knight v. Board of Education* (1976), 38 Ill. App. 3d 603, 348 N.E.2d 299, to support its proposition. *Knight*, however, only held that "[a] s applied to the actions of a State agency upon an individual, the Illinois due process clause guarantees the same rights as does the due process clause of the Fourteenth Amendment." (Emphasis added.) (*Knight*, 38 Ill. App. 3d at 606, 348 N.E.2d at 301.) The case at bar does not involve the actions of a State agency upon an individual, so *Knight* is inapplicable. We must, therefore, separately analyze the boundaries of the Illinois due process clause as it concerns the burden of proof of the sanity of a defendant in a criminal case.

■ Defendant's argument follows four avenues of thought. He first contends that Illinois case law has established that once a defendant produces enough evidence to rebut the presumption of sanity, sanity becomes an element of a crime. Thus, defendant argues that because the State has the burden to prove beyond a reasonable doubt all the elements of a crime charged against a defendant (*In re Winship*, 397 U.S. at 364, 25 L. Ed. 2d at 375, 90 S. Ct. at 1072-73; *People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432, 434),

the statute unconstitutionally shifts the burden of proof. We note that sanity is not a *per se* element of a crime. Under both old section 3—2 and new section 3—2, a defendant is presumed sane. Only if the defendant presents enough evidence to rebut the presumption is the issue of sanity, and the burden of proof thereof, raised. (Ill. Rev. Stat. 1981, ch. 38, par. 3—2(a); Ill. Rev. Stat. 1985, ch. 38, par. 3—2(a); *People v. Burnside* (1977), 52 Ill. App. 3d 524, 528, 367 N.E.2d 733, 737.) Defendant, however, is correct that "the prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime." (*Weinstein*, 35 Ill. 2d at 470, 220 N.E.2d at 434.) Consequently, if sanity is an element of an offense, then the State must bear the burden of proving sanity.

Defendant cites several cases in support of his proposition that sanity is a separate element of an offense, but we believe that defendant has misinterpreted the cases he cites for this proposition. Defendant points to the language in the following cases:

"Under the law of this State the presumption [of sanity] is overcome by evidence, tending to prove insanity of the accused, which is sufficient to raise a reasonable doubt of sanity at the time of the commission of the act for which the accused is sought to be held accountable. When that is done the presumption of sanity ceases and the prosecution is then required to prove the sanity of the accused beyond a reasonable doubt, *as a necessary element of the crime charged.*" (Emphasis added.) *People v. Skeoch* (1951), 408 Ill. 276, 280, 96 N.E.2d 473, 475.

"[O]nce [defendant] introduced some evidence on the issue of his sanity at the time of the commission of the offenses, the prosecution had the burden of proof on that issue in addition to its burden of proof *on the other elements of the offenses.*" (Emphasis added.) *People v. Hall* (1974), 19 Ill. App. 3d 14, 18, 311 N.E.2d 246, 249; see *Burnside*, 52 Ill. App. 3d at 528, 367 N.E.2d at 737.

"In Illinois, all persons are presumed sane; however, once a defendant presents sufficient evidence to raise a reasonable doubt as to his sanity at the time of the offense the State must prove defendant's sanity beyond a reasonable doubt *as a necessary element of its case.* [Citations.] *** [Once defendant raised the issue of insanity,] the burden fell upon the State to prove defendant's sanity *as an element of the crime charged.*" (Emphasis added.) (*People v. Bloodworth* (1979), 68 Ill. App. 3d 341, 347, 385 N.E.2d 904, 908.)

The courts handed down all of these decisions when old section 3—2

was in effect. Rather than holding that sanity was an element of every offense, the courts in the foregoing cases merely noted that once a defendant rebutted the presumption of sanity, the State had the same burden of proof with regard to the issue of sanity as it had with regard to the specified elements of the offense. The courts emphasized that the sanity issue had to be treated just like all of the other elements of the crime. Because the statute in effect at that time placed the same burden of proof on the State with respect to both the elements of an offense and sanity, the courts simply reiterated the old statutory requirement. Only with the enactment of new section 3—2 did the burden of proof of sanity shift to the defendant.

■■ The Illinois insanity statute itself separates the insanity issue from the elements of an offense by providing:

> "When the defense of insanity has been presented during the trial, the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged ***." (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e).)

Thus, the Illinois legislature did not consider sanity to be an element of an offense even if a defendant raised the issue.

Defendant's second argument is that even if sanity is not itself a separate element of every crime, a defendant who is insane lacks the requisite mental state—*mens rea*—to commit the crime. Because *mens rea* is an element of murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 4—3), defendant argues that shifting the burden of proof of sanity unconstitutionally shifts the burden of proof of *mens rea* to the defendant. Thus, defendant contends that proving insanity is equal to proving that defendant lacked the mental state to commit the crime.

Defendant's contention has some support outside Illinois. Several courts and scholars outside our State have expressed the opinion that sanity is part and parcel of *mens rea*. A majority of the United States Supreme Court dismissed the appeal of *Rivera* for lack of a substantial Federal question. Justice Brennan, however, dissented on the basis that the apparent conflict between *Leland* and *Winship* presented a substantial Federal question. Brennan noted in his dissent: "[T]he plea of insanity, whether or not the State chooses to characterize it as an affirmative defense, relates to the accused's state of mind, an essential element of the crime ***." *Rivera*, 351 A.2d 561, *appeal dismissed* (1976), 429 U.S. at 880, 50 L. Ed. 2d at 161, 97 S. Ct. at 227 (Brennan, J., dissenting).

Although Montana abolished the insanity defense (*State v. Korell* (1984), 213 Mont. 316, 690 P.2d 992), it also views sanity as part of *mens rea*. In Montana, rather than pleading insanity, a defendant can use evidence of mental disease or defect during the trial. As the court in *Korell* explained:

"During trial, evidence of mental disease or defect is admissible when relevant to prove that, at the time of the offense charged, the defendant did not have the state of mind that is an element of the crime charged, e.g., that the defendant did not act purposely or knowingly." *Korell*, 213 Mont. at 322, 690 P.2d at 996.

In 1968, the Colorado Supreme Court held that a statute requiring a defendant to prove his insanity by a preponderance of the evidence violated the due process clause of the Colorado Constitution. (*Jefferson*, 165 Colo. at 258, 439 P.2d at 743.) The due process clause of the Colorado Constitution, which provided that "[n]o person shall be deprived of life, liberty or property, without due process of law" (Col. Const. 1980, art. II, §25), is virtually identical to the Illinois due process clause. In striking down the statute, the court equated *mens rea* with sanity. Thus, the court viewed the new law as shifting the burden of proof of a material element of the crime—*mens rea*—to the defendant. *Jefferson*, 165 Colo. at 265, 439 P.2d at 747-48.

Several legal commentators have also reasoned that *mens rea* and sanity are so intertwined that the burden of proof of sanity should be on the State. A list of some of these commentators includes: W. La-Fave & A. Scott, Handbook on Criminal Law §8, at 48 (1972) (prefers view that prosecution should bear burden of proof beyond a reasonable doubt because insanity defense directly negatives existence of mental element of crime); Note, *The Law of Rebuttable Presumptions in Maine*, 23 Me. L. Rev. 175, 196 (1971) (prosecution should bear burden of proving sanity beyond reasonable doubt because mental capacity to commit crime is essential element of crime); Comment, *Insanity—The Burden of Proof*, 30 La. L. Rev. 117, 125 (1969) (cannot prove intent without proving sanity so State should prove sanity, like all other elements, beyond reasonable doubt); Juren, *The Insanity Defense in Criminal Trials—Burden of Proof*, 10 Suffolk U. L. Rev. 1037, 1062 (where, according to definition of mental defect, insanity involves element of crime, prosecution should bear burden of proof).

■ Although defendant's argument that *mens rea* cannot be proved without first proving sanity has some support, we believe the correct view in Illinois, and the prevalent view in this country, is that proof of *mens rea* is separate from proof of sanity. The Illinois courts

and the Illinois legislature have made a distinction between *mens rea* and sanity. Illinois law defines insanity as "the lack of a substantial capacity either [1] to appreciate the criminality of one's conduct or [2] to conform one's conduct to the requirements of the law as a result of mental disorder or mental defect." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—1—11.) As to the first part of the definition, we agree with the State's argument that a defendant's intent and ability to carry out an act is not affected by his inability to appreciate the criminality or wrongfulness of the act. A defendant can perform an intended act whether or not he recognizes the moral or social implications of the act.

■ As to the second part of the definition, the State points out that a defendant can perform an intended act, but due to insanity, be unable to conform his or her conduct so that he or she does not perform the act. Thus, a defendant could intend to perform an act but still be insane. At least one Illinois court has agreed with this reasoning. In *People v. Allegri* (1984), 127 Ill. App. 3d 1041, 469 N.E.2d 1126, the court held that insanity was not a defense at a probation revocation hearing. The court noted:

> "An individual may knowingly commit acts without being able to conform his conduct to the requirements of the law. Having the requisite mental state does not imply an ability or inability to conform one's conduct." *Allegri*, 127 Ill. App. 3d at 1048, 469 N.E.2d at 1132.

This reasoning would explain the language of the *Clark* and *Foster* decisions defendant cites for support.

> "[Once defendant rebuts the presumption of sanity,] the burden shifts to the State to prove beyond a reasonable doubt that the defendant possessed the requisite mental capacity at the time of the alleged crime." *People v. Foster* (1979), 76 Ill. 2d 365, 379, 392 N.E.2d 6, 12.

> "[T]he insanity defense reflects the fundamental principle that a person is not criminally responsible for an involuntary act." (*People v. Clark* (1981), 102 Ill. App. 3d 414, 417, 429 N.E.2d 1255, 1257.)

The *Clark* court used the word "involuntary." An insane defendant's actions could be involuntary because although the defendant intended to do an act, insanity would cause him or her to carry out the act when otherwise he or she would not do it. We are aware that a material element of every crime is a voluntary act (Ill. Rev. Stat. 1985, ch. 38, par. 4—1; *People v. Grant* (1978), 71 Ill. 2d 551, 558, 377 N.E.2d 4, 8), but our legislature and courts have never defined insanity as an

involuntary act, although they have noted the similarity between the two defenses (*Grant*, 71 Ill. 2d at 558-59, 377 N.E.2d at 8). We also decline to so define insanity. In *Foster*, we believe the court used the term "mental capacity" to mean sanity rather than intent. Regardless of our interpretation, however, because *mens rea* and sanity required the same standard and burden of proof at the time the *Foster* court rendered its decision, the court could have just loosely interchanged its terms without much thought to semantics.

On the other hand, the court in *Hopps*, also cited by defendant, definitely tied intent to sanity.

> "Our statute declares, to constitute crime, there shall be an union or joint operation of act and intention, or criminal negligence. The overt act is one ingredient, the intention another, and their union is indispensable to constitute guilt. Intention is proved by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused. The killing alone, under the most aggravated circumstances, will not suffice, if sound mind and discretion be wanting. *** If [defendant] be affected with insanity, then sound mind is wanting, and crime is not established. Sound mind, or sanity, then, is an ingredient in crime, quite as essential as the overt act." (*Hopps v. People* (1863), 31 Ill. 385, 392-93.)

In fact, the court stated that a defendant could not have the requisite mental state for the offense unless he or she was first found to be sane. (*Hopps*, 31 Ill. at 392-93.) The *Hopps* court, however, did not base its decision on the Illinois Constitution, and as we have just noted, later Illinois courts apparently chose not to follow that court's interpretation of sanity and *mens rea*. See *Allegri*, 127 Ill. App. 3d at 1048, 469 N.E.2d at 1132.

We are aware that the courts of this State have held that it is unconstitutional to place the burden of proof on a defendant to determine his competency to stand trial. (*People v. Bender* (1960), 20 Ill. 2d 45, 54, 169 N.E.2d 328, 332-33; *People v. Garlick* (1977), 46 Ill. App. 3d 216, 223, 360 N.E.2d 1121, 1126.) We believe, however, that these decisions are distinguishable from the case at bar. In *Bender*, the court stated that "[i]t would be a strange rule, indeed, to impose upon [a defendant] the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof." (*Bender*, 20 Ill. 2d at 53-54, 169 N.E.2d at 332.) For this reason, the court held that it would deny a defendant his due process rights if he or she had to bear the burden of proof. On the other hand, when a

defendant pleads insanity as a defense, as in the case at bar, his competency to stand trial has already been established. Consequently, the circumstances giving rise to a due process violation in a competency hearing do not exist when the defendant pleads insanity during his or her trial for the crime.

The Indiana Supreme Court held that a statute which required a defendant to prove his insanity by a preponderance of the evidence did not violate the Indiana Constitution. (*Price*, 274 Ind. at 483, 412 N.E.2d at 785.) The court in *Price* first noted that "[c]ases in jurisdictions which place the burden on the defendant view insanity as an affirmative defense, while those which place the burden on the state see sanity as an element of the offense." (*Price*, 274 Ind. at 482, 412 N.E.2d at 785.) The court then quoted the following from a District of Columbia case:

> " 'The essential elements of the charge of felony murder do not include proof of sanity. If that were the case, the Government would be required to produce evidence establishing sanity beyond a reasonable doubt as part of its direct case, before the defendant introduced an iota of testimony, and that is not and never has been the law.' " (*Price*, 274 Ind. at 482, 412 N.E.2d at 785, quoting *United States v. Greene* (1973), 489 F.2d 1145, 1155, *cert. denied* (1974), 419 U.S. 977, 42 L. Ed. 2d 190, 95 S. Ct. 239.)

The court in *Price* reviewed Indiana case law and determined that the statute under review was constitutional.

> "Although early Indiana cases hold that sanity is an element of a crime which requires a specific intent, the foundation of these cases is not based upon constitutional considerations. See *Noelke v. State* (1938), 214 Ind. 427, 15 N.E.2d 950; *Fritz v. State* (1912), 178 Ind. 463, 99 N.E. 727; *Stevens v. State* (1869), 31 Ind. 485. The Legislature has examined this state of the law and has seen fit to change the law. We must follow the legislative policy unless that policy is found to be unconstitutional." (*Price*, 274 Ind. at 482-83, 412 N.E.2d at 785.)

The court was correct that its past decisions had equated *mens rea* with sanity and had viewed sanity as an element of a crime, but the court also correctly pointed out that these decisions did not refer to the Indiana Constitution for support. The *Fritz* case is an example:

> "It is axiomatic that without a criminal intent there is no crime, and without mental capacity for it there can be no criminal intent. Appellant's sanity, mental capacity to form the intent to kill, was, if in issue, an essential element of the offense

with which he was charged. This element the state was bound to prove beyond a reasonable doubt, and not merely by a preponderance of the evidence." (*Fritz*, 178 Ind. at 466-67, 99 N.E. at 729.)

Thus, the history of Indiana's view and treatment of insanity parallels that of Illinois. The *Price* court, however, upheld the statute even though Indiana, like Illinois (and even Colorado), had placed the burden of proof on the State prior to the legislature's amendment of the statute.

We also note that Colorado is the only State to strike down this type of statute on due process grounds (*Jefferson*, 165 Colo. at 263, 439 P.2d at 746). Moreover, at least a majority of the States require the defendant to prove his or her sanity (Ala. Code §15—16—2 (1975); *Hutchens v. State* (1970), 45 Ala. App. 507, 232 So. 2d 687, *writ denied and appeal dismissed*, 285 Ala. 755, 232 So. 2d 700; Ariz. Rev. Stat. Ann. §13—502 (Supp. 1987); *Bowling*, 151 Ariz. App. at 230, 726 P.2d at 1099; Ark. Stat. Ann. §41—601 (1977); *Gruzen v. State* (1979), 267 Ark. 380, 591 S.W.2d 342, *cert. denied* (1980), 449 U.S. 852, 66 L. Ed. 2d 64, 101 S. Ct. 144; Cal. Penal Code §1369 (West 1982); *In re Bye* (1981), 116 Cal. App. 3d 569, 172 Cal. Rptr. 186; Conn. Gen. Stat. Ann. §§53a—12, 53a—13 (West 1985); Del. Code Annot. tit. 11, §§304, 401 (1987); *Rivera*, 351 A.2d at 561; Ga. Code Ann. §§16—3—2, 16—3—28 (1984); *Boswell*, 243 Ga. at 732, 256 S.E.2d at 470; Haw. Rev. Stat. §§704—402, 701—115(b) (1985); Ind. Code Ann. §35—41—4—1 (Burns 1985); *Price*, 274 Ind. at 479, 412 N.E.2d at 783; Ky. Rev. Stat. Ann. §504—020 (Baldwin 1985); *McDonald v. Commonwealth* (Ky. 1977), 554 S.W.2d 84; La. Rev. Stat. Ann. 14.14 (West 1986); *State v. Nealy* (La. 1984), 450 So. 2d 634; Me. Rev. Stat. Ann. tit. 17—A, §39 (Supp. 1987); *State v. Crocker* (Me. 1981), 435 A.2d 58; Md. Health—Gen. Code Ann. §12—109 (Supp. 1987); Minn. Stat. Ann. §611.026 (West 1987); *State v. Bott* (1976), 310 Minn. 331, 246 N.W.2d 48; Mo. Rev. Stat. §552.030(6) (1986); *State v. Burton* (Mo. Ct. App. 1976), 544 S.W.2d 60; Neb. Rev. Stat. §29—2203 (1985); Nev. Rev. Stat. §194.010(4) (1987); *Gallegos v. State* (1968), 84 Nev. 608, 446 P.2d 656; N.H. Rev. Stat. Ann. §618:2(II) (1986); N.J. Stat. Ann. §2C:4—1 (West 1982); *State v. Lewis* (1975), 67 N.J. 47, 335 A.2d 12; Or. Rev. Stat. §§161.305, 161.055 (1987); 18 Pa. Cons. Stat. Ann. §315(a) (Purdon 1983); *State v. Arpin* (1980), 122 R.I. 643, 410 A.2d 1340; Tex. Penal Code Ann. §§8.01(a) (Vernon Supp. 1988), 2.041 (Vernon 1974); *Graham v. State* (Tex. Crim. App. 1978), 566 S.W.2d 941; Vt. Stat. Ann. tit. 13, §4801(b) (Supp. 1987); *State v. Messier* (1985), 145 Vt. 622, 497 A.2d 740;

Wash. Rev. Code Ann. §9A:12.010(2) (1988); *State v. Crenshaw* (1983), 98 Wash. 2d 789, 659 P.2d 488; Wyo. Stat. §7—11—305(b) (1987); *Brooks v. State* (Wyo. 1985), 706 P.2d 664), and the trend is toward placing the burden on the defendant (compare Note, *The Insanity Defense in Criminal Trials—Burden of Proof*, 10 Suffolk U. L. Rev. 1037, 1052 (1976), and *Annual Survey of Rhode Island Law: Insanity Defense—Allocating the Burden of Proof*, 15 Suffolk U. L. Rev. 795, 800 (1981), with *Recent Changes in Criminal Law: The Federal Insanity Defense*, La. L. Rev. 337, 356 (1985)).

 Defendant asserts that the Federal circuit courts of appeal have held that the government must prove sanity beyond a reasonable doubt. (*Amador Beltran v. United States* (1st Cir. 1962), 302 F.2d 48, 52; *United States v. Currens* (3d Cir. 1961), 290 F.2d 751, 761; *Hall v. United States* (4th Cir. 1961), 295 F.2d 26, 27-28; *United States v. Lyons* (5th Cir. 1983), 704 F.2d 743, 747; *United States v. Jackson* (6th Cir. 1978), 587 F.2d 852, 854; *United States v. Sennett* (7th Cir. 1974), 505 F.2d 774, 775-76; *United States v. Winn* (9th Cir. 1978), 577 F.2d 86, 89; *United States v. Munz* (10th Cir. 1974), 504 F.2d 1203, 1209.) In *Davis v. United States* (1895), 160 U.S. 469, 40 L. Ed. 2d 499, 16 S. Ct. 353, the Supreme Court held that in Federal criminal prosecutions the government bears the burden of proving sanity beyond a reasonable doubt. The Supreme Court later held that the *Davis* decision was merely a rule of procedure and was not based on constitutional considerations. (*Leland*, 343 U.S. at 797-99, 96 L. Ed. at 1308-09, 72 S. Ct. at 1006-07; *Patterson*, 432 U.S. at 203-05, 53 L. Ed. 2d at 287-89, 97 S. Ct. at 2323-24.) Thus, because *Davis* applies to Federal criminal cases, it did not set precedent for State criminal prosecutions; although Federal circuit courts of appeal must adhere to *Davis*, we are not bound by it.

 Defendant also argues that the insanity defense is not an affirmative defense. Defendant points out that affirmative defenses are defenses where a defendant admits the allegations against him or her, but states that certain circumstances justified the act. Defendant argues that insanity is not such a defense because under the insanity defense a defendant does not admit the allegations, but denies that he or she had the mental state to commit the offense. Defendant analogizes the insanity defense to the defense of alibi in that the defendant in both instances denies that he or she had the requisite mental state to commit the act. Thus, if the allocation of the burden of proof to the defendant for the alibi defense would be unconstitutional, according to the defendant, then likewise it would be unconstitutional for the insanity defense.

The State reasons that insanity is an affirmative defense because the defendant admits the charges against him, but states that his mental defect justified the act. We agree with the State. If a defendant uses an alibi defense, he or she not only denies having the intent to commit the crime, but also denies ever committing the act itself. The defendant does not admit committing the offense, and thus does not need to assert a justification for committing it.

The *Jefferson* court analogized the alibi defense to the insanity defense. According to that court, just as the alibi defense negates the State's allegation that the defendant was present at the scene and committed the crime, so too the insanity defense negates the State's allegation that the defendant had the requisite mental state, *mens rea*, to commit the offense. The court then noted that it had previously held that a defendant did not have the burden of establishing an alibi. (*Jefferson*, 165 Colo. at 265, 439 P.2d at 748.) The Illinois Supreme Court in *Hopps* made the same comparison between the alibi and insanity defenses. (*Hopps*, 31 Ill. at 393.) In linking the alibi and insanity defenses, however, both the *Jefferson* and *Hopps* courts first assumed that sanity was part of *mens rea* and thus an element of a crime. Since we have already found sanity to be distinct from *mens rea*, we believe that the insanity defense does not negate *mens rea* and thus the legislature could properly classify it as an affirmative defense rather than an element of an offense.

■■ Defendant's third argument is that the doctrine that the State must prove defendant's sanity beyond a reasonable doubt has become so fundamental in Illinois law that new section 3–2 violates the due process clause of the Illinois Constitution. Defendant points out that Illinois has required the State to prove sanity beyond a reasonable doubt since the court's decision in *Hopps* in 1863. Defendant draws our attention to the decision of the Colorado Supreme Court in *Jefferson*. The court in *Jefferson* emphasized that prior to the Colorado legislature's enactment of the statute in question, Colorado statutory law and Colorado case law required the State to prove sanity beyond a reasonable doubt. The court stated:

> "The language of these cases has taken such form over a period of many years as to become part and parcel of our concept of constitutional 'due process of law.' As thus interpreted by the judiciary over the years the due process clause of the state constitution includes the doctrine that the state must prove guilt beyond a reasonable doubt, and that the accused cannot be required by legislative enactment to prove insanity or any other defense by a preponderance of the evidence. *** Never

before in the history of Colorado has the legislature purported to make this very drastic change in the firmly established concept of criminal law \*\*\*. \*\*\* There has been no need heretofore to mention 'due process' because the long line of decisions established a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental.' \*\*\*

The recently enacted legislative act now considered presents to the court for the first time, under the due process clause of our constitution, the question of the power of the legislature to destroy all the numerous decisions of this court on this fundamental doctrine. The legislature has attempted to do by statute that which for almost one hundred years this court has held could not be done without violating fundamental principles of criminal justice." (*Jefferson*, 165 Colo. at 262-63, 439 P.2d at 745-46.)

As we have already pointed out, however, Colorado also based its decision on the principle that sanity was part of *mens rea* and therefore an element of the offense. Moreover, in contrast to Colorado, the Indiana Supreme Court stated that because it did not base its earlier decisions on constitutional considerations, the legislature had the authority to change the law, regardless of how long that law had been intact. (*Price*, 274 Ind. at 483, 412 N.E.2d at 785.) We agree with Indiana's stance. The fact that a procedure has been in effect for a long period of time does not, by itself, make that procedure so fundamental that it is a part of our constitutional due process. We find no special circumstances in the past or present law of Illinois which suggest that this statute violates our constitution.

■ Defendant finally contends that it would be more equitable to put the burden on the State to prove sanity because it, rather than a defendant who is often indigent, has more resources available to obtain the necessary psychiatric evidence. Although this is a consideration the legislature could take into account when it debated the passage of the statute, defendant's contention alone is not enough to render the statute unconstitutional. Moreover, Illinois has provided that appointed counsel for an indigent defendant can receive reimbursement from the State or county for funds spent to obtain expert witnesses. Ill. Rev. Stat. 1985, ch. 38, pars. 104—13(a), (e); Ill. Rev. Stat., 1986 Supp., ch. 38, par. 113—3(d); see *People v. Kinion* (1983), 97 Ill. 2d 322, 454 N.E.2d 625; *In re Petition for Fees* (1983), 117 Ill. App. 3d 744, 453 N.E.2d 949; *People v. Vines* (1976), 43 Ill. App. 3d 986, 358 N.E.2d 72.

■ In summary, we hold that section 3—2, which requires a

defendant to prove his insanity by a preponderance of the evidence, does not violate the constitutions of the United States or Illinois. The Illinois courts and the Illinois legislature have distinguished between *mens rea* and sanity. Because a defendant can intend to commit an offense and yet be subject to a mental disease which renders him or her incapable of appreciating the nature of or controlling his or her actions, sanity is not an element of a crime, such as murder. Moreover, although prior to this statute Illinois had always placed the burden of proof of sanity on the State, that is not enough by itself to render the statute unconstitutional.

Accordingly, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

HARRISON, P.J., and LEWIS, J., concur.